2011 Ark. 243

**Curtis Lavell VANCE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–598.**

Supreme Court of Arkansas.

June 2, 2011.

Janice W. Vaughn, Ark. Pub. Defender Comm'n, for appellant.

Dustin McDaniel, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., and Vada Berger, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant Curtis Lavell Vance appeals the judgment of the Pulaski County Circuit Court entered pursuant to a jury verdict convicting him of capital murder, residential burglary, theft of property, and rape. Although the State sought the death penalty for the capital-murder charge, the jury sentenced Appellant to life imprisonment without parole. That sentence renders jurisdiction of this appeal properly in this court pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2011). For reversal, Appellant contends the circuit court erred by failing to suppress evidence derived from his DNA sample and statements he made to police officers; by allowing the introduction of evidence of other crimes; by excluding expert evidence vital to his defense; by failing to declare a mistrial due to prosecutorial misconduct during closing argument; and by failing to declare a mistrial after some members of the jury saw Appellant in prison garb and shackles. We find no error and affirm the judgment of convictions.

Because Appellant does not challenge the sufficiency of the evidence supporting

his convictions, we need only recite the evidence presented that relates to the issues on appeal. *See Davis v. State*, 367 Ark. 330, 240 S.W.3d 115 (2006). Suffice it to say at this point that the crimes at issue here were the result of a single incident occurring in the victim's home in Little Rock, Arkansas, during the early morning hours of October 20, 2008. The victim, Anne Pressly, was discovered within hours after the crimes occurred, lying in her bed with critical injuries. She had multiple blunt-force injuries and lacerations to her face and head, defensive wounds to her hand, arms, and shoulder, as well as injuries to her anal and vaginal areas. She was hospitalized and died on October 25, 2008, without ever regaining consciousness. Her billfold, purse, and computer were missing from her home. DNA evidence recovered from the crime scene eventually led police to Appellant at his home in Marianna, Arkansas, on November 25, 2008. On appeal, Appellant challenges the investigators' initial contact with him at his home and the saliva sample and statements that followed; he also alleges errors in his trial.

## I. *Motion to Suppress Evidence and Statements*

As his first point for reversal, Appellant contends the circuit court erred in denying his motion to suppress evidence derived from his saliva sample and four statements he gave to police officers. Appellant asserts that he was illegally seized at his residence and that his saliva and each statement taken thereafter was either fruit of that alleged illegality or involuntarily made. He brought his motion pursuant to the Fourth, Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution; article 2, sections 8 and 10 of the Arkansas Constitution; Rule 2.3 of the Arkansas Rules of Criminal Procedure; and Rules 401 through 404 of the Arkansas Rules of Evidence. At the conclusion of a three-day hearing, the circuit court ruled from the bench and denied the motion to suppress the evidence derived from his saliva sample and the four statements on both state- and federal-law grounds.[1] When reviewing the denial of a motion to suppress evidence obtained from an alleged illegal seizure, or the denial of a motion to suppress a confession, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *See Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006) (denial of motion to suppress evidence from seizure); *see also Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003) (denial of motion to suppress confession). Any conflict in the testimony of different witnesses is for the circuit court to resolve. *Grillot*, 353 Ark. 294, 107 S.W.3d 136.

### A. November 25, 2008 Saliva Sample and Statement

The testimony and evidence presented at the suppression hearing revealed the following sequence of events leading up to Appellant's giving of his saliva sample and statement on November 25, 2008. On November 24, 2008, Detective J.C. White of the Little Rock Police Department learned from the Arkansas Crime Lab that the DNA from a hair recovered from the Pressly crime scene in Little Rock was

---

1. Although the circuit court denied the motion to suppress on both state- and federal-law grounds, it did not do so on the basis of an argument for greater state-law protection. Appellant does not develop an argument on appeal that state law affords him greater protection than does federal law. He asserts on appeal that the lawfulness of the seizure and the voluntariness of his statements are primarily federal questions.

linked to other DNA evidence from an unidentified suspect in the rape of a woman named Kristen Edwards in Marianna, Arkansas. Detective White immediately traveled to Marianna with Detective Greg Siegler, also of the Little Rock Police Department, and met with Sergeant Carl McCree, a detective in Marianna, and Ms. Edwards. Although Ms. Edwards had not seen the man who raped her, the investigation of her rape led to the development of a list of persons of interest. At this time Appellant was not on that list.

Detective White stated that there was a lot of follow-up that needed to be done, so the two detectives returned to Marianna the next day, November 25, 2008, along with two additional detectives from the Little Rock Police Department, Kevin Simpson and Stuart Sullivan, and FBI Agent John Brunell. At this point, Appellant's name was added to the list of persons of interest. According to Detective White, the investigation was in a weeding-out process or a process of eliminating suspects rather than developing suspects, and they proceeded to Appellant's home first, as it was only two blocks from the police station. The six officers representing three police agencies arrived at Appellant's residence in three unmarked police cars. They were not in uniform, but some did have their badges visible. While all officers were armed, none removed their weapons from their holsters.

Different officers went to different places around the residence upon their arrival. Detectives Simpson and Sullivan were the first officers to come in contact with Appellant, who was in a car in the back of the house. The officers asked Appellant who he was and then identified themselves to Appellant. They told Appellant they were investigating a rape and asked Appellant if he would mind coming down to the police station to talk to them.

According to Detective Simpson, they asked Appellant "[i]f he would mind coming down to talk to us, we would give him a ride, and bring him back." Detective Simpson also stated that they had the same conversation with Appellant's girl-friend, Sheanika Cooper, "[w]ould you mind coming down and talking to us at the police department, we'll give you a ride, and bring you back." Both Appellant and Ms. Cooper were transported to the police station in separate vehicles. The testimony was in dispute as to whether Appellant was handcuffed during transport, but there was no dispute that he was not handcuffed or restrained while at the police station.

Once at the station, Appellant and Ms. Cooper were placed in different interrogation rooms. Appellant signed a consent form and gave his saliva sample for the purpose of ruling him out as a suspect in the rape. According to Detective White, Appellant stated that he wanted to clear his name. Detective White stated that he did not read Appellant his *Miranda* warnings because Appellant was not in custody at the time. He admitted that they did not have probable cause to arrest Appellant at that time, and Detective White acknowledged that there was nothing to even indicate that Appellant was a strong suspect at the time. Appellant gave a statement to the police that was recorded. Appellant then left the station. Detective White stated that they offered him a ride, but Appellant chose to walk the two blocks back home. Detective White gave Appellant his card, and Appellant stated that he would call them if he heard anything about the rape.

Some of the officers took Appellant's saliva sample with them when they returned to Little Rock later that day. Other officers remained in Marianna to continue the investigation's process of

eliminating other persons of interest. Before setting forth the pertinent facts related to the other challenged statements, we first review the circuit court's ruling regarding the saliva sample and initial statement.

■■■ In deciding whether a seizure of a person has transpired, this court follows *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). *Shields v. State,* 348 Ark. 7, 70 S.W.3d 392 (2002). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Flanagan,* 368 Ark. at 151, 243 S.W.3d at 872 (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870). The United States Supreme Court has listed examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870. "In the absence of some such evidence, otherwise inoffensive contact between a member of the |₇public and the police cannot, as a matter of law, amount to a seizure of that person." *Shields,* 348 Ark. at 13, 70 S.W.3d at 394 (quoting *Mendenhall,* 446 U.S. at 555, 100 S.Ct. 1870). Rule 2.3 of the Arkansas Rules of Criminal Procedure "does not require an explicit statement that one is not required to accompany the police; rather, the police only need to take

such steps as are 'reasonable to make clear that there is no legal obligation to comply' with the request to come to the police station." *Flanagan,* 368 Ark. at 152, 243 S.W.3d at 872–73 (quoting *Shields,* 348 Ark. at 14, 70 S.W.3d at 395). When interpreting Rule 2.3, this court follows *Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870. *State v. Bell,* 329 Ark. 422, 948 S.W.2d 557 (1997).

■■■ On appeal, Appellant asserts that no reasonable person placed in his situation on November 25, 2008, would have believed he was free to refuse the officers' request to come to the police station and to give a saliva sample. Appellant contends that the number of officers and police vehicles that arrived at his home amounted to a show of force, that they demanded rather than requested he come to the station, that Appellant was handcuffed and physically touched as he was transported in the police car, and that the officers did not expressly tell Appellant that he and Ms. Cooper were free to refuse their requests. Accordingly, Appellant contends that he was illegally seized pursuant to the Fourth Amendment, the Arkansas Constitution, and Rule 2.3. Appellant further contends that the evidence derived from the sample should have been suppressed as fruit of the illegal seizure pursuant to *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[2]

■■ |₈The State correctly responds that the fact that officers did not tell Appellant he was free to go is but one factor to consider among the totality of the circumstances when determining whether a sei-

---

**2.** Appellant further contends that his Fifth Amendment rights were violated because the officers did not give him *Miranda* warnings prior to questioning him and taking his saliva sample. However, it is not clear that this argument was raised or ruled upon below.

Even constitutional arguments are waived on appeal if not raised below. *Taylor v. State,* 2010 Ark. 372, 372 S.W.3d 769, *cert. denied,* —— U.S. ——, 131 S.Ct. 2106, 179 L.Ed.2d 903 (2011).

zure has occurred. *Bell,* 329 Ark. 422, 948 S.W.2d 557. As for the number of officers and police vehicles, the State explains that this is not remarkable given that the three vehicles and six officers represented three law enforcement agencies that were conducting two crime investigations in two cities. The State also points out that the remaining concerns, including the handcuffs during transport, were all matters to be resolved by the circuit court in its credibility determinations.

After hearing the foregoing testimony, the circuit court ruled from the bench that Appellant was not seized and that he consented to giving a saliva sample on November 25, 2008, at the Marianna police station. The circuit court reasoned that the testimony showed that there had been no showing of physical force or authority, that the officers asked Appellant to go to the station to talk to them, and that Appellant stated he was willing to do anything to clear his name. The circuit court acknowledged that there was a dispute as to whether Appellant was handcuffed while he was transported to the station in the police vehicle, but correctly concluded "that's neither here nor there." *See Shields,* 348 Ark. 7, 70 S.W.3d 392 (indicating that handcuffing a person for transport in a police vehicle does not necessarily render an encounter a seizure).

According to the circuit court, its conclusion that Appellant went to the station voluntarily was solidified by Appellant's actions while he was there. The circuit court observed that Appellant consented in writing to give his saliva for DNA testing and that his demeanor while giving the statement that followed was not one of a person who was being subjected to examination but more of someone, as Appellant testified to at the hearing, trying to clear his name. The circuit court concluded by noting that Appellant was not intimidated.

Accordingly, the circuit court ruled there had not been a seizure under the Fourth Amendment or the Arkansas Constitution and that Rule 2.3 had not been violated.

Our review of the totality of the circumstances leads us to the conclusion that the circuit court's ruling was not clearly against the preponderance of the evidence. We note that although there were six officers, their presence was not threatening. Although they were armed, they did not remove their weapons from their holsters. The officers testified that the tone of conversation with Appellant was light, jovial, polite, friendly, and casual. When the officers offered to drive Appellant back home from the station at the same time they requested he come to the station, they satisfied Rule 2.3's requirement to make it clear that Appellant was not legally obligated to comply with their request to accompany them to the station. Accordingly, the circuit court's decision to deny the motion to suppress evidence derived from the saliva sample and the statement given November 25, 2008, is affirmed.

## B. November 26–27, 2008 Statement

We now turn to the next challenged statement. The evidence presented at the hearing on Appellant's motion to suppress revealed that the following events occurred from the time Appellant returned to his home from the Marianna police station. On November 26, 2008, the investigating officers in Little Rock received information from the crime lab that preliminary DNA tests of Appellant's saliva sample matched DNA recovered from the crime scenes in both Marianna and Little Rock. The officers obtained a warrant for Appellant's arrest, and found Appellant, along with several family members, at his aunt's home in Little Rock. Appellant testified at the hearing that the officers barged into his aunt's house, slapped Appellant in the

face, threw him on the floor, and handcuffed him. Appellant stated that one officer shoved him in the vehicle, put a gun in his face, and said, "forget justice for you for what you are being charged with.... [Y]ou better tell them everything. I don't care if you have to make it up, you better tell them someone put a bullet in your head because for what you did, you're supposed to be dead."

Appellant was transported by police vehicle to the Little Rock Police Station and placed in an interview room with Detectives White and Hudson. Detective White read Appellant his *Miranda* rights. Appellant signed a waiver of those rights, and then gave a statement initially denying having committed any crime, but later admitting to breaking into homes and stealing laptop computers for resale. When the officers told Appellant they had DNA evidence linking him to the Little Rock murder of Ms. Pressly, Appellant admitted to being in her home, to seeing Ms. Pressly in her bed during the course of the theft, and to becoming aroused to the point that he touched himself. However, he denied ever assaulting or striking Ms. Pressly. When the officers continued questioning him about the rape of Ms. Pressly, Appellant told them that he had hit Ms. Pressly four or five times and that he sexually assaulted her. Appellant stated that he was tired of talking and invoked his right to counsel and requested an attorney. Appellant does not dispute that the interview ceased at that point in relation to the Little Rock crimes. However, Officer White then read Appellant his *Miranda* rights again, Appellant signed another waiver of his rights, and officers continued questioning Appellant about the Marianna crimes. We now examine Appellant's challenge to these statements.

Appellant argues that the statement he gave on November 26–27, 2008, following his arrest should also have been suppressed as it was fruit of the illegal seizure from the day before. According to Appellant, the taint of the alleged illegal seizure had not yet been purged and his arrest and confessions were the direct result of the DNA testing of the illegally obtained saliva sample on the day before. We reject Appellant's fruit-of-the-poisonous-tree argument as being without merit, as we have previously determined there was no illegal seizure the previous day.

Appellant also argues, however, that he gave these statements without a valid waiver of his *Miranda* rights, due in part to his low intellectual functioning and the coercive and threatening activity that surrounded his arrest and his questioning. Thus, Appellant argues his statements should have been suppressed pursuant to his Fifth Amendment rights as well.

Statements made while in police custody are presumed to be involuntary, and the burden rests on the State to prove their voluntariness and a waiver of *Miranda* rights by a preponderance of the evidence. *Osburn v. State*, 2009 Ark. 390, 326 S.W.3d 771, *cert. denied,* — U.S. ——, 130 S.Ct. 1522, 176 L.Ed.2d 113 (2010). In order to determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, we look to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* When reviewing the circuit court's ruling, we make an independent determination based upon the totality of the circumstances surrounding the waiver including the age, experience, education, background, and intelligence of the defendant. *Id.* Again, we will reverse a circuit court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.*

In support of his argument that the State did not meet its burden of proving

his statement was given in the absence of coercion, Appellant emphasizes his testimony at the suppression hearing that the officers repeatedly talked to him about "a mob of people outside the jailhouse waiting to just explode" and about showing remorse to try to avoid the death penalty. Appellant also relies on his testimony that the officers called him names such as a "sick-o, murderer." Appellant argues that this "mental and physical abuse and threats" had the obvious desired effect of wearing Appellant's resistance down to police intimidation, particularly when coupled with the facts that Appellant is of low intelligence, had no history of serious criminal activity and thus little knowledge of the legal system and his rights, and was interviewed persistently for over three hours beginning late at night and into the morning hours. The State responds that, as with Appellant's argument as to his alleged seizure in Marianna, here, too, Appellant's argument on appeal largely relies on his and his witness's self-serving testimony concerning his arrest and interrogation, without acknowledging that disputes in testimony were for the circuit court to resolve.

The circuit court ruled that, after listening to the transcripts of the statements and observing Appellant on the witness stand during the hearing, Appellant's intellectual functioning seemed to be quite good and did not create a problem in this case. The circuit court discounted Appellant's testimony as being not credible that the police pointed a gun at him and slapped him around, while also acknowledging that an arrest is not a "tender moment."[3] The circuit court ultimately concluded that Appellant's confession was not coerced, was given pursuant to a knowing waiver of rights, and was not fruit of the poisonous tree.

The circuit court reached its ruling under the analysis of the relevant factors, and the ruling was not against the preponderance of the evidence. The circuit court made some credibility determinations that were properly its to make, and we defer to the superior position of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005). The circuit court is not required to believe the testimony of any witness, especially that of the accused, since he or she is the person most interested in the outcome of the proceedings. *Id.*

The officers who interrogated Appellant stated that he was cooperative when he read and waived his *Miranda* rights. While Appellant emphasizes on appeal that the interview was not recorded, the officers stated that Appellant requested it not be recorded. Indeed, Appellant testified at the hearing that he "didn't want to talk about Anne Pressly on tape." Most telling of the fact that Appellant's waiver was knowingly and intelligently made was Appellant's invocation of his right to counsel during the interview. As the circuit court stated, "He understands that when he wants a lawyer he can stop the proceeding." The record before us plainly demonstrates that Appellant acted of his own free will when giving his statement following his arrest. Accordingly, the circuit court's finding that Appellant executed a valid waiver and gave a voluntary confession is supported by a preponderance of

3. Although Appellant cites *Foreman v. State*, 321 Ark. 167, 901 S.W.2d 802 (1995), and contends that not all officers who were present on the night in question were at the hearing, it is not clear that Appellant raised this argument below or obtained a ruling on it. As objections to the material-witness rule must first be raised to the circuit court, we do not address this issue on appeal. *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008).

the evidence, and the denial of the motion to suppress the November 26–27, 2008 statement is affirmed.

We are not unmindful that Appellant makes much of the fact that immediately after the officers ceased interviewing him about the Little Rock crimes due to his invocation of his right to counsel, the officers immediately proceeded to question Appellant on the Marianna crimes. The State, however, told the circuit court that it would not seek to introduce the statements that Appellant made during that interview relating to the Marianna crimes. We need not decide whether those statements may have been taken in violation of *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), as Appellant contends, because those statements were not in fact introduced against Appellant; and therefore, despite his assertions to the contrary, he cannot demonstrate prejudice. *See Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999). We note that Appellant also contends it was error to admit other evidence of the Marianna crimes, but that is the subject of Appellant's second point on appeal.

C. December 10, 2008 and February 24, 2009 Statements

While Appellant was incarcerated at the county jail awaiting trial, he twice requested to speak to Detectives White and Hudson about his case. His first request was on December 10, 2008. The second was a written request signed on February 21, 2009. Both times Appellant's requests were granted, and he was transported from the county jail to the police station where he signed waivers and gave statements to police. On December 10, 2008, Appellant told police that he and two other persons entered Ms. Pressly's house and that he left the house to put the laptop in his car while the other two remained inside to steal a television. He explained that the two others later came running out of the house without the television in a hurry to leave the scene. On February 24, 2009, Appellant gave a different version of events as to how he came into possession of Ms. Pressly's purse and laptop computer, although he did admit to being involved with others who burglarized homes and stole items that could be sold quickly for easy money.

Appellant does not deny that he requested to speak to the police. He does, however, contend that he gave the statements in violation of his rights since his court-appointed counsel had previously filed in district court a notice of invocation of his Fifth, Sixth, and Fourteenth Amendment rights to counsel and had previously obtained an order from the district court requiring the police to give his counsel sufficient notice that Appellant was being transported from the county jail. Testimony from the suppression hearing indicated that Appellant's counsel was notified at the same time Appellant was transported pursuant to his written requests to speak to the detectives, but that his counsel's requests for access to Appellant during these statements were denied.

Appellant again argues first that these statements should have been suppressed as fruit of the alleged illegal seizure on November 25, 2008. Appellant suggests that the taint of the seizure was not and could not be purged as his arrest and subsequent confessions were the direct result of the DNA testing of the illegally obtained saliva sample. We again reject this argument since we have previously determined that the November 25, 2008 encounter was not illegal.

Appellant next argues that, even though these two statements were brought about at his request, he did not give the statements voluntarily, knowingly, and intelli-

gently because they were obtained in violation of the district court order to give his counsel sufficient notice of his transport from the county jail. Appellant contends that the lack of candor and the failure of the police officers to inform him that his lawyers were trying to talk to him violated his federal and state constitutional rights to counsel, due process, and privilege against self-incrimination. Appellant asserts that the officers' actions amounted to exploitation and interference with an attorney's attempts to act as a medium between his or her client and the State, in violation of *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), and *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In addition, citing a review of other states' laws in *New Jersey v. Reed*, 133 N.J. 237, 627 A.2d 630 (1993), Appellant argues that other states have held that this type of police action renders an otherwise valid Fifth and Sixth Amendment waiver invalid and in violation of Fourteenth Amendment due process.

The State responds that Appellant's statements following his request to speak to the detectives violated neither the earlier district court order concerning notice to counsel, nor his rights to counsel and to remain silent, because Appellant waived his rights each time he made a statement after initiating contact with the police. The State responds further that the authorities relied upon by Appellant do not support his contention that his right to counsel was violated when his counsel's request for access to Appellant was denied, because neither the cited authorities nor the district court's order prevented Appellant from exercising his own free will to contact police, waive his rights, and make a statement. Finally, the State further responds that there is no need to look to other states for persuasive authority here.

The State is correct that Appellant's reliance on *Moran*, 475 U.S. 412, 106 S.Ct. 1135, and *Moulton*, 474 U.S. 159, 106 S.Ct. 477, is misplaced. In *Moran*, the United States Supreme Court stated that Moran's waiver of his *Miranda* rights was not invalidated by the failure to inform him of his counsel's phone call to police. Likewise, Appellant's waiver in this instance was not invalidated by the officers' failure to inform him that his counsel was requesting to see him during the discussions with the detectives that Appellant himself had requested. *Moulton* simply does not apply on its facts. As the State correctly asserts, the use of an undercover codefendant to record Moulton's statements bears no resemblance to Appellant's undisputed requests to speak to investigating officers. In addition, we note that valid waivers of the Fifth Amendment right to counsel, such as the ones Appellant made on December 10 and February 24, are also valid with respect to the Sixth Amendment right to counsel, "[s]ince the right under both sources is waived using the same procedure." *Montejo v. Louisiana*, 556 U.S. 778, 795, 129 S.Ct. 2079, 2090, 173 L.Ed.2d 955 (2009). Finally, the State is also correct that we need not resort to other jurisdictions for persuasive authority when, as in this case, they are not consistent with controlling precedent from the United States Supreme Court.

The circuit court denied the motion to suppress both statements on all grounds asserted, ruling that Appellant did not dispute that he reinitiated the contact with police and stated that he did not expect a lawyer to be there. The record supports this decision as Appellant testified at the hearing that he knew his attorney had told him not to talk to the police, but that he needed to talk to somebody that knew something about his case and that he felt like he had a right to talk to the police. The circuit court further ruled that there

was simply no evidence of coercion, threats, or promises made to Appellant during these statements, that his statements were voluntary, and that the court had never seen a more clear exercise of a defendant's constitutional rights.

The right to counsel is Appellant's right to assert, and it is his right to waive. Accordingly, the circuit court correctly ruled that Appellant's Fifth and Sixth Amendment rights were not violated when police officers denied his counsel's requests to be present during interviews that Appellant himself had requested. The evidence was not only clear but also undisputed that Appellant reinitiated contact with the police, and Appellant did not deny that in his testimony at the hearing. The evidence was also clear that Appellant executed a valid waiver before giving both statements. The decision of the circuit court that Appellant reinitiated contact and made a valid waiver is supported by a preponderance of the evidence, and the decision to deny suppression of the December 10, 2008 and February 24, 2009 statements is affirmed.

## II. *Evidence of the Marianna Crimes*

As his second point for reversal, Appellant contends that the circuit court erred in allowing the State to present evidence during his trial of the rape committed against Ms. Edwards in her home in Marianna on April 21, 2008, some six months prior to similar crimes committed against Ms. Pressly in Little Rock on October 20, 2008. Appellant argues that the admission of the evidence of the Marianna crimes was error under Rules 403 and 404(b) of the Arkansas Rules of Evidence, because those crimes were too dissimilar to the Little Rock crimes and were more prejudicial than probative.

The State first responds that this issue is not preserved for appellate review due to an inadequate objection below. We do not agree, however. Prior to trial, Appellant first filed a motion for production of alleged Rule 404(b) evidence, asking the circuit court to rule on the issues of relevance and prejudice. Appellant also requested exclusion under Rules 401 to –404 in his motion to suppress. After the motion to suppress was denied, Appellant filed a motion to redact from his statements any Rule 404(b) evidence. On the first day of trial, prior to opening statements, Appellant once again requested exclusion of the Marianna rape or any other Rule 404(b) evidence. When Ms. Edwards was called to testify, Appellant renewed his objections to her testimony based on Rules 402 through 404. Finally, when other witnesses were called to testify about the Marianna crimes, Appellant renewed his Rule 404(b) objections.

Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2011). Evidence is not admissible under Rule 404(b) simply to show a prior bad act. *Osburn*, 2009 Ark. 390, 326 S.W.3d 771. Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.* Any circumstance that links a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible un-

der Rule 404(b). *Creed v. State,* 372 Ark. 221, 273 S.W.3d 494 (2008).

■ While evidence of other crimes or bad acts may be admissible under Rule 404(b), to be probative under Rule 403, the prior crime must be similar to the crime charged. *See Osburn,* 2009 Ark. 390, 326 S.W.3d 771. This court gives considerable leeway to the circuit court in determining if the circumstances of the prior crimes and the crimes at hand are sufficiently similar to warrant admission under Rule 404(b). *See Sasser v. State,* 321 Ark. 438, 902 S.W.2d 773 (1995). In reviewing the admission of evidence under Rule 404(b), this court has observed that circuit courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Rounsaville v. State,* 2009 Ark. 479, 346 S.W.3d 289.

Appellant cites cases such as *Green v. State,* 365 Ark. 478, 231 S.W.3d 638 (2006), *Akins v. State,* 330 Ark. 228, 955 S.W.2d 483 (1997), and *Diffee v. State,* 319 Ark. 669, 894 S.W.2d 564 (1995), in which this court has reversed for Rule 404(b) errors. But Appellant relies heavily on *Alford v. State,* 223 Ark. 330, 266 S.W.2d 804 (1954), in which this court reversed the trial court's admission of evidence of a prior rape in a prosecution for a subsequent rape and ruled the prior rape was not relevant to intent. Appellant's focus on *Alford,* however, overlooks this court's more recent cases affirming the use of evidence of a prior rape in a prosecution for a subsequent rape. *See, e.g., Rounsaville,* 2009 Ark. 479, 346 S.W.3d 289; *Osburn,* 2009 Ark. 390, 326 S.W.3d 771; *Creed,* 372 Ark. 221, 273 S.W.3d 494.

In *Osburn,* 2009 Ark. 390, 326 S.W.3d 771, this court affirmed the admission of evidence related to an incident that had occurred twenty-seven years prior to the rape being tried on the basis that it was probative of intent, motive, or plan. In *Creed,* 372 Ark. 221, 273 S.W.3d 494, this court reviewed its recent decisions on the admissibility of prior rapes:

Other recent cases before this court involving similar circumstances and Rule 404(b) issues are instructive here. In *Morris v. State,* 367 Ark. 406, 240 S.W.3d 593 (2006), we held that the testimony of a witness about her rape by the defendant was sufficiently similar to another victim's allegations of rape to be admissible as proof of motive, intent, preparation, plan, and scheme pursuant to Rule 404(b). In *Fells v. State,* 362 Ark. 77, 207 S.W.3d 498 (2005), the court ruled that testimony by a previous rape victim showing similar circumstances surrounding both rapes was admissible under Rule 404(b) because it showed the defendant's motive, intent, and plan to rape the victim there. *See also Davis v. State,* 362 Ark. 34, 207 S.W.3d 474 (2005) (evidence that youth minister made sexual advances toward a church member was admissible to show that his forced sexual interaction with another church member was not consensual); *Burmingham v. State,* 342 Ark. 95, 27 S.W.3d 351 (2000) (evidence of similarities in way rape of first victim was perpetrated was admissible to show similar scheme and intent when rape of second victim was committed); *Sasser v. State,* 321 Ark. 438, 902 S.W.2d 773 (1995) (testimony of first victim, a convenience store clerk, regarding defendant's rape and attempted murder of her was admissible to prove defendant's intent to kill a second convenience store clerk several years later).

*Id.* at 227, 273 S.W.3d at 499–500. Thus, it is as true today as it was in 1954 when this court decided *Alford,* that, "[t]his question of introducing proof of other offenses in criminal cases has been considered by us

on more than a hundred occasions. In reviewing these opinions one notices that the results reached in the various cases have been harmonious to a high degree." *Alford*, 223 Ark. at 333, 266 S.W.2d at 806.

Appellant identifies six categories of dissimilarities between the Marianna crimes and the Little Rock crimes: the time of day or night of the attacks; the attacker's alleged use of a gun in Marianna and a blunt object in Little Rock; that Edwards was not struck, while Pressly was severely beaten and killed; the specific location of the two attacks within the houses; the specific items of personal property taken from the homes; and the manner of entry into the homes.

While Appellant is correct that there are some differences in the two crimes, that does not demonstrate that the trial court abused its considerable discretion in concluding that the crimes were sufficiently similar to warrant admission of evidence relating to the Marianna crimes. As the State observes, what Appellant focuses on as the most significant difference between the two events—that Ms. Pressly suffered defensive wounds and was beaten and killed while Ms. Edwards was not beaten at all—demonstrates a difference in the victims rather than in the crimes. Ms. Edwards testified that as her attacker raped her vaginally and anally, he threatened to kill her; that she believed him; that she therefore was "[one] hundred percent compliant"; and that her compliance was the reason she is alive. Ms. Edwards also stated that her assailant stole her cell phone, a DVD, and money from her purse. The record before us demonstrates that both the Marianna crimes and the Little Rock crimes began with an entry into the victims' homes for the purpose of stealing electronic devices, and that, as both victims were at home during the burglary, both crimes then progressed into vaginal

and anal rapes. Therefore, consistent with our conclusion in *Osburn*, we conclude that the Marianna bad acts of residential burglary, theft, and rape had independent relevance to the intent, scheme, or plan of the Little Rock crimes of residential burglary, theft, rape, and capital murder, and that the two crime sprees were sufficiently similar to warrant admission of evidence relating to the Marianna crimes.

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2011). This court has noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *Rounsaville*, 2009 Ark. 479, 346 S.W.3d 289. Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *Id.* This court reviews a circuit court's ruling under Rule 403 for an abuse of discretion. *Id.* While Ms. Edwards' testimony may have been prejudicial, as most 404(b) evidence is, it was also independently relevant to Appellant's intent, scheme, or plan, and its probative value was not outweighed by the danger of unfair prejudice. Accordingly, we conclude the circuit court did not abuse its discretion in admitting the evidence relating to the Marianna crimes.

In reaching this conclusion, we are not unmindful of Appellant's contention that it was also error to admit the testimony of the two Marianna police officers, a Marianna nurse, two State Crime Lab employees, and Detective White concerning the Marianna crimes. This evi-

dence was independently relevant to establish the chain of custody for the DNA evidence that linked the two crimes and identified Appellant as the suspect in both. Accordingly, there was no error in admitting the testimony of these witnesses.

■ Similarly, we are not unmindful of Appellant's assertion that the State never identified which particular exception listed in Rule 404(b) applied in this case. The list of exceptions to inadmissibility under Rule 404(b) is not an exclusive list; rather, it represents examples of the types of circumstances where evidence of other crimes or wrongs or acts would be relevant and admissible. *Williams v. State,* 343 Ark. 591, 36 S.W.3d 324 (2001). This court has affirmed a trial court's admission of Rule 404(b) evidence that was erroneously based on one exception, modus operandi, because it was a correct result based upon another exception, intent. *Id.*

III. *Expert Testimony of Appellant's Limited Mental Capacity and Suggestibility*

■ For his third point for reversal, Appellant contends the circuit court erred in granting the State's motion in limine to exclude the proffered testimony of Dr. Daniel H. Grant, a neuropsychologist and expert in forensic psychology, and Dr. Stephen Greenspan, an expert in psychology and developmental disabilities. The State filed a pretrial motion stating that the defense had given it notice that the anticipated witnesses would prove Appellant's "low intellectual functioning and cognitive impairment and the role they play in his suggestibility—going to the reliability of his statements." The State thus moved to exclude the anticipated testimony on the basis that judging the credibility of the evidence and of the witnesses is a function of the jury and that expert testimony on the credibility of a witness is an invasion of the jury's province. The circuit court granted the State's motion in limine, ruling that the jury could determine such matters—why a person might want to give a confession, to extricate themselves from the scene, to put themselves on the periphery and blame others—without expert opinion.

Appellant proffered the following testimony. Dr. Grant testified that he had conducted numerous tests on Appellant over the course of two days and determined that Appellant had a full scale IQ of 75, which placed him in the fifth percentile. He opined that Appellant had cognitive impairments or deficits involving language and memory. Dr. Greenspan, who had recently authored a book on the effect of cognitive impairment on a person's tendency to engage in foolish or gullible behavior, testified that people with limited intelligence are much more likely to give false confessions. In addition, Dr. Greenspan explained that persons with cognitive impairments have a "need to look more normal than they really are to cover up their limitations," so they confabulate or "fak[e] knowledge that they don't have," and when the veracity of their account of an event is challenged, they change what they are saying "to create the appearance of competence . . . or to get the people who are questioning them to leave them alone." Dr. Greenspan acknowledged that he had not interviewed Appellant but had reviewed the transcripts and tapes of Appellant's statements to police; he opined that he "saw lots of evidence of what I would consider confabulation as reflected in the fact that [Appellant] gave many different versions often changing the same version on a dime basically." The circuit court stated that, after hearing the foregoing proffered testimony, it was even more convinced that to allow such testimony would be to invade the province of the jury.

In his written response to the State's motion, Appellant cited *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), and argued that the challenged evidence had a bearing on the reliability of his confessions and therefore to exclude it would be to deprive him of his right to present a complete defense, which is rooted in the Due Process, Compulsory Process, and Confrontation Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as well as in article 2, sections 3, 8, and 10 of the Arkansas Constitution. However, as the State points out, after Appellant proffered the foregoing testimony, he failed to obtain a ruling on the constitutional issues. Although Appellant did bring the constitutional claims to the circuit court's attention in an attempt to make the record clear, the circuit court simply moved on to the issue of Appellant's proffered jury instructions without ruling on the constitutional issues relating to the proffered testimony. We are not persuaded by Appellant's assertion in his reply brief that a ruling was not called for concerning the constitutional issues. It is Appellant's burden to obtain a ruling on an issue, even a constitutional one, and the failure to do so results in a waiver of that issue on appeal. *Woodall v. State*, 2011 Ark. 22, 376 S.W.3d 408. Moreover, the burden of providing a record sufficient to demonstrate error is upon the appellant. *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003). Accordingly, the constitutional component of Appellant's argument concerning the proffered expert testimony is not preserved for our review.

Appellant did not rely solely on constitutional grounds for admitting the testimony, however. Appellant also relied below on Arkansas case law and Rule 702 of the Arkansas Rules of Evidence and now argues on appeal that the proffered expert testimony should have been allowed to explain to the jury the phenomenon of why a person would confess to a crime he did not commit.

The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse the trial court's decision absent a manifest abuse of discretion. *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006). The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702 (2011); *Buford*, 368 Ark. 87, 243 S.W.3d 300. An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier of fact to understand and draw its own conclusions. *Buford*, 368 Ark. 87, 243 S.W.3d 300. Where the introduction of expert testimony would invade the function of the jury or where it does not help the jury, the testimony is not admissible. *Id.*

We do not consider Appellant's citations to cases from other jurisdictions, because this court has previously ruled that a trial court did not abuse its discretion under Rule 702 by excluding expert testimony on the relationship between diminished IQ and false confessions when the defendant had an opportunity to cross-examine the officers about the confession, and the expert testimony would have, among other things, usurped the jury's role as trier of fact and weigher of credibility. *Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005). Appellant incorrectly asserts in his reply brief that *Flowers* did not involve proffered expert testimony on the relationship between diminished IQ and false confessions. Although the circuit court did not expressly rely on *Flowers*, it did exclude the proffered evidence on the basis that the jury did not need an expert witness to

determine such matters and that allowing the proffered testimony would invade the jury's province to judge the credibility of Appellant's statements.

We see no abuse of discretion in such a ruling. Appellant had ample opportunity to cross-examine the officers who took his statements. In addition, the jury viewed a videotape of one of Appellant's statements and heard an audio recording of two others. The proffered testimony was not beyond the ability of the jury to understand and draw its own conclusions. Since Dr. Greenspan opined that Appellant was confabulating, the proffered testimony would have invaded the jury's function as trier of fact. Therefore, consistent with our holding in *Flowers*, we affirm the circuit court's exercise of discretion under Rule 702 to exclude Appellant's proffered testimony of Drs. Grant and Greenspan.

## IV. *Closing Argument*

For his fourth point on appeal, Appellant alleges that the prosecuting attorney made improper remarks during closing argument and contends that the circuit court erred in failing to declare a mistrial due to those remarks. Appellant first challenges the prosecutor's remarks that asked the jurors to put themselves in the victim's place. The State characterizes this portion of the prosecuting attorney's argument as a "golden-rule" argument. Appellant next challenges remarks made during the State's rebuttal closing argument that Appellant describes as personal attacks on defense counsel's honesty and integrity.

### A. Golden–Rule Argument

■ Appellant first challenges remarks from the State's initial closing argument that Appellant avers were intended to appeal to the passions of the jurors, to inflame and scare them, and to encourage them to put themselves in the victim's place. Appellant argues that such remarks are prohibited by *Adams v. State*, 229 Ark. 777, 318 S.W.2d 599 (1958), where this court held that it was reversible error for a prosecuting attorney to make a closing argument asking the jurors to put themselves in the victim's place. We need not repeat the comments that Appellant challenges here because, as the State contends, Appellant's failure to timely object to the comments precludes our review of this issue on appeal.

Appellant acknowledges that he did not immediately object to these comments, but did unsuccessfully move for a mistrial on the morning after closing arguments were made. Citing the third objection to the contemporaneous-objection rule in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), and Ark. R.App. P.-Crim. 10(b)(iv) (2011), Appellant contends that this is a serious error for which the trial court had a duty to intervene and declare a mistrial in the absence of a contemporaneous objection, and therefore his failure to timely object below does not preclude our review on appeal.

■■ The law is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity, and a motion for mistrial must likewise be made at the first opportunity. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). The reason behind this rule is that a trial court should be given an opportunity to correct any error, perhaps before any prejudice occurs. *Id.* The contemporaneous-objection rule applies to claims that a prosecutor has made an improper "golden-rule" argument. *See Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998).

As for Appellant's claim that the challenged remarks in this case fall under the third *Wicks* exception and Rule 10(b)(iv), we first note that Rule 10 does not apply to this case because Appellant was not

sentenced to death. Secondly, we note that this court has previously rejected the same argument Appellant makes now. *See Buckley v. State,* 349 Ark. 53, 76 S.W.3d 825 (2002). In *Buckley,* this court was presented with a challenge to a prosecutor's "golden-rule" argument, and, citing *Johnson,* 333 Ark. 673, 972 S.W.2d 935, concluded that, because this court had previously rejected an attempt to argue a "golden-rule" type of error on appeal when no objection was made, the alleged error did not come within the third *Wicks* exception. Consistent with *Buckley,* we conclude that because Appellant did not object contemporaneously to the prosecutor's "golden-rule" argument, his claim that the circuit court should have declared a mistrial is barred from our review on appeal.

### B.   Attacks on Defense Counsel

Appellant also challenges remarks the prosecuting attorney made in the rebuttal closing argument that he claims were attacks on defense counsel's honesty and integrity. According to Appellant, the challenged remarks were to the effect that defense counsel was not presenting Appellant's case with honesty and integrity, and that defense counsel was insensitive, misleading the jury, and putting words in the mouths of witnesses. At the first of the challenged remarks concerning defense counsel's honesty and integrity, Appellant immediately objected, and the circuit court admonished the jury that what the lawyers say is not evidence. Appellant objected a second time to the prosecutor's remark that the defense was trying to mislead the jury, and the circuit court responded, "Well, again, the jury will remember the evidence." When the prosecuting attorney later stated that defense counsel put words into a particular witness's mouth, Appellant objected a third and fourth time and requested a bench conference. At the conclusion of the bench conference, the circuit court instructed counsel to "move on with something else." At this point, the prosecuting attorney ceased the attacks on defense counsel and continued his rebuttal argument at length without any further objection from Appellant. At no time during the rebuttal did Appellant request a mistrial.

The State responds that it does not read the challenge to these remarks as alleging a ground for reversal. Indeed, Appellant's objections were resolved in his favor, the jury was twice admonished, and the objectionable argument ceased. This court has recognized on multiple occasions that not every instance of prosecutorial misconduct mandates a mistrial and that any prejudice suffered may be cured by a proper admonition. *See, e.g., Muldrew v. State,* 331 Ark. 519, 963 S.W.2d 580 (1998) (citing *White v. State,* 330 Ark. 813, 958 S.W.2d 519 (1997); *Sullinger v. State,* 310 Ark. 690, 840 S.W.2d 797 (1992); and *Porter v. State,* 308 Ark. 137, 823 S.W.2d 846 (1992)). Appellant received all the relief he requested, in addition to two admonitions that he did not request. A mistrial should be declared only when an admonition to the jury would be ineffective. *Muldrew,* 331 Ark. 519, 963 S.W.2d 580. We do not view the prosecutor's remarks about defense counsel in the present case as rising to the level of a serious error for which the circuit court had a duty to grant a mistrial on its own. We find no error in this regard.

### V.   *Prison Garb*

For his fifth and final point on appeal, Appellant contends the circuit court erred in failing to grant a mistrial after Appellant was seen leaving the courthouse at the end of the third day of trial while in shackles and wearing prison garb by two jurors who were still in the lobby of

346

the courthouse. Appellant had filed a pre-trial motion to appear in court in civilian clothing and without restraint.

On the morning of the fourth day of trial, before the jury entered the court-room, counsel for Appellant informed the court that on the day before, Appellant had been seen by "a couple of jurors" in his prison garb and shackles as he left the courthouse, and counsel stated that "we need to do something to prevent this from happening again." The court, the prose-cuting attorney, and the bailiff all ac-knowledged that they had seen the events described by Appellant's counsel. The cir-cuit court granted Appellant's request and instructed the bailiff to inform the sheriffs to wait approximately twenty minutes un-til "we get through before they bring [Ap-pellant] out." There was no further objec-tion by Appellant's counsel, nor was there a request for a mistrial. In fact, Appel-lant received all the relief he requested.

On appeal, Appellant does not acknowl-edge the absence of a request for mistrial, but cites *Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002), and argues his case should be dismissed because he did not waive his right to "not be forced to trial in prison garb." Appellant was *not*, however, "forced to trial in prison garb." Appellant was allowed to appear in the courtroom in civilian clothes and without restraints. What occurred here was a brief and inad-vertent sighting of Appellant in restraints and prison garb by less than all of the jurors outside of the courtroom.

The State responds that Appellant's ar-gument that the circuit court should have declared a mistrial is not preserved for appellate review because Appellant did not request a mistrial and was given all the relief he requested. The State correctly points out that, unlike his fourth point on appeal, Appellant does not expressly con-tend here that the circuit court should

have granted a mistrial sua sponte under the third *Wicks* exception. We note that to the extent that Appellant is arguing a *Wicks* exception, this court has previously held that a prison-garb objection must be raised timely below in order to be pre-served for appeal. *Young v. State*, 283 Ark. 435, 678 S.W.2d 329 (1984).

We agree that a motion for mistri-al was required in order to preserve this issue for appellate review. We note in addition that even assuming arguendo that Appellant had requested a mistrial, one was not warranted here because the sight-ing was brief and inadvertent, by less than all of the jurors, outside the courtroom after trial had recessed for the day, and the jurors had previously been informed that Appellant was incarcerated. *See, e.g., Hill v. State*, 285 Ark. 77, 685 S.W.2d 495 (1985), *overruled on other grounds by Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

## VI. *Statement of Compliance with Rule 4–3(i)*

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2011), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Appellant, and no error prejudicial to the rights of Appellant has been found.

Although not raised by either party, our review reveals that the judgment and com-mitment order contains what appears to be a few scrivener's errors. First, the dates that the offenses of burglary and theft of property occurred are erroneously noted on the judgment as October 20, 2009, rather than October 20, 2008. Second, although the jury's verdict form from the sentencing phase of the trial stated a term of life imprisonment for the rape charge, and although the circuit court pronounced

from the bench that it was sentencing Appellant to life imprisonment on the rape charge, the judgment and commitment order reflects a sentence of 480 months on the rape charge. Our belief that this is a scrivener's error, rather than a reduction in sentence authorized by Arkansas Code Annotated section 16–90–107(e) (Repl. 2006), *see Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002), is bolstered by Appellant's statement in his brief that he received a life sentence on the charge of rape.

When there is a discrepancy between the judgment and commitment order and the pronouncement of sentence, it is the entered judgment and commitment order that controls. *Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005) (citing *Johninson v. State*, 330 Ark. 381, 953 S.W.2d 883 (1997), and Ark. Sup. Ct. Admin. Order No. 2 (2005)). However, we note that clerical errors do not prevent enforcement of a judgment, *Grissom v. State*, 2009 Ark. 557, 2009 WL 3681389 (per curiam), and that a circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment or order. *State v. Rowe*, 374 Ark. 19, 285 S.W.3d 614 (2008) (quoting *Lord v. Mazzanti*, 339 Ark. 25, 29, 2 S.W.3d 76, 79 (1999), for the proposition that the common-law rule of nunc pro tunc orders and the power of a court to make "the record speak the truth, but not to make it speak what it did not speak but ought to have spoken," applies in criminal cases).

For the aforementioned reasons, the judgment of convictions is affirmed.

HANNAH, C.J., concurs.

JIM HANNAH, Chief Justice, concurring.

I concur in the decision reached by the majority. I write separately because I reach that decision on a different basis than that relied upon by the majority.

The State introduced the evidence of the unrelated crimes in Marianna at its own peril. Substantial evidence of the charged crimes was introduced at trial and would support the jury's verdict of guilty of the crimes charged in the present case. The course taken by the State in this case would have precluded a harmless-error analysis had Vance succeeded in his arguments that Arkansas Rule of Evidence 404(b) excluded the evidence. Because the State introduced the evidence of unrelated crimes in Marianna, this court could not have found that the guilty verdict rendered "was surely unattributable to the error." *See Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

Because the majority continues to hold contrary to my view on the admissibility of evidence of similar crimes, wrongs, or acts, I concur with the outcome of this case under the principle of stare decisis. However, I state my willingness to revisit this issue in the future. *See Saul v. State*, 365 Ark. 77, 225 S.W.3d 373 (2006) (Hannah, C.J., concurring).