Cite as 2019 Ark. App. 563

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & IV
### No. CR-19-186

| | |
|---|---|
| STANLEY VANOY RANSOM<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** December 4, 2019<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NOS. 23CR-11-473 & 23CR-11-1001]<br><br>HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br><br>REVERSED AND DISMISSED |

**BRANDON J. HARRISON, Judge**

In 2012, Ransom was found guilty in two separate cases and placed on probation in each one of them. The Faulkner County Circuit Court sentenced Ransom to eighty-four months' probation for robbery, seventy-two months' probation for second-degree battery, twelve months' probation for domestic battery third, and twelve months' probation for resisting arrest in case number 473. In case number 1001, the court sentenced Ransom to eighty-four months' probation for failing to appear.

Fast forward to 2015 when the State filed petitions to revoke Ransom's probation. After hearings on the petitions, the court found that Ransom had violated the terms imposed in each of the two cases that were originally adjudicated in 2012. The court's decisions were reduced to one written judgment, which was entered on 23 March 2015. The March judgment, which we have reproduced as an addendum to this opinion, is straightforward. It has two checkmarks. Next to the first checkmark the judgment reads, "[T]he Defendant

has violated the terms and conditions of his probation." Next to the second check mark is this statement: "The Defendant shall serve 30 days in the Faulkner County Detention Center, with a credit for 41 days spent in custody awaiting disposition of this matter." The rest of the form boxes or spaces are unchecked. Ransom did not appeal the March 2015 judgment.

In August 2015, the State filed a petition to revoke Ransom's probation in case number 473, which the State later amended in September 2015 to include case number 1001. In December 2015, the circuit court entered a judgment for the State on those petitions. Ransom did not appeal.

In July 2016, the State again filed a petition to revoke and then amended it in case number 473. In October 2016, the circuit court entered a judgment in case numbers 473 and 1001. Ransom did not appeal.

In 2017, the State filed two more petitions to revoke. The two petitions were decided together by the circuit court in November 2018. The court revoked Ransom's probation in both cases. In case number 473, the court sentenced him to an aggregate term of fifteen years in the Arkansas Department of Correction. In case number 1001, the court sentenced Ransom to ten years' imprisonment. These dispositions are reflected in two separate judgments entered on 20 November 2018 (no. 473) and 3 December 2018 (no. 1001).

A few days after the December 3 judgment had been entered, Ransom filed posttrial motions and asked the court to set aside the November and December 2018 judgments. He argued that the court had no jurisdiction to revoke his probation because he was not on probation. This in turn meant the November 2018 and December 2018 judgments must

be vacated. The posttrial motions were deemed denied by operation of law when the court did not rule on them within thirty days after they were filed. Ark. R. Crim. P. 33.3(c) (2019). Ransom timely appealed the two 2018 judgments; he did not appeal the deemed denial of his posttrial motions.

In this court, Ransom argues that the circuit court's 23 March 2015 judgment sentenced him to thirty days in jail but did not extend his probation period. Consequently, he was not on probation when the State filed any petition to revoke after he had served the sentence imposed by the March 2015 judgment. Because he was not on probation when the court purported to revoke any probation period after the March 2015 judgment was entered, Ransom says that the now appealed 2018 judgments, for which he is currently serving sentences, must be vacated.

The State contends, and our dissenting colleague agrees, that the unchecked boxes in the March 2015 judgment were scrivener's errors—meaning inadvertent errors by omission—because the transcript from the 23 March 2015 revocation hearing shows that the court intended to continue Ransom's probation, and Ransom himself understood that he was on probation. Therefore, there is no material problem dating from March 2015 going forward.

We first observe that the State has not argued that Ransom purged any error in the 23 March 2015 judgment because he acted as if he were on probation and allowed the State to "revoke" his probation multiple times, unchallenged, until the 2018 judgments were entered. In our view, such an argument is foreclosed by current case law—which may be why the State did not make it—and the State has not otherwise advocated for a change in the law. In fact, our research has not found one case in which an Arkansas appellate court

3

has held that a criminal defendant's course of conduct waives an argument that the circuit court lacked the authority to revoke a probation sentence.

The cases hold the opposite: a circuit court's power to revoke a defendant's probation may be raised for the first time on appeal. *See Trif v. State*, 2016 Ark. App. 452, at 4, 503 S.W.3d 802, 805 (whether circuit court can revoke probation or has jurisdiction to do so may be raised for the first time on appeal). Ransom's argument is therefore properly before us.

To the State's scrivener's-error point, such an error is "essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)." *Francis v. Protective Life Ins. Co.*, 371 Ark. 285, 293, 265 S.W.3d 117, 123 (2007) (citing *Luckes v. Luckes*, 262 Ark. 770, 772, 561 S.W.2d 300, 302 (1978)). A circuit court's power to correct mistakes or errors is to make "the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." *Lord v. Mazzanti*, 339 Ark. 25, 29, 2 S.W.3d 76, 79 (1999). In this case, the State is trying to do just what it cannot do—place words into the circuit court's pen. The State never moved the circuit court to correct the March 2015 judgment, not even after Ransom had filed a posttrial motion pointing out the very omission that is the State's so-called scrivener's error. The circuit court never extended Ransom's probation period in writing; instead, it sentenced him to thirty days' imprisonment in 2015 (and a credit for forty-one days "spent in custody awaiting disposition of this matter"). Years later, however, the State wants to correct a substantive error, assuming for the sake of argument that it was an error, by way of scrivener's-error law.

4

True, the circuit court told Ransom during a 23 March 2015 hearing that it was going to extend his probationary period:

CIRCUIT COURT: It's my understanding you're prepared this morning to acknowledge that you have in fact violated the terms of your probation and accept the State's recommendation which is that you'll serve 30 days in the Faulkner County Detention Center with credit for time that you've already spent there—some 41 days—and that your—all terms and conditions of your probation will be reinstated. So in other words, whatever you had to do before, you've got to do now. That's report, drug testing, pay fines, fees, whatever it is, you'll still have those obligations. You understand that.

RANSOM: Yeah, I do.

CIRCUIT COURT: Mr. Ransom, this order I have, Judgment and Disposition Order, is that your signature on the line identified as the Defendant?

RANSOM: It is.

CIRCUIT COURT: Okay. And you understand this order incorporates what you and I've just talked about by way of resolution.

RANSOM: Yes, I do.

CIRCUIT COURT: Mr. Ransom, then, do you in fact acknowledge that you did engage in conduct that violated the terms of your probation?

RANSOM: Yes, I do.

The problem is that these spoken words cannot supersede the court's subsequent written judgment. When there is a conflict between the judgment (sentencing order) and a pronouncement of sentence, the entered judgment (sentencing order) controls. *Vance v. State*, 2011 Ark. 243, at 35, 383 S.W.3d 325, 347. End of story. This bright-line rule is a matter of great importance in the criminal law and elsewhere. *E.g.*, *J.P. v. State*, 2015 Ark.

App. 308, at 1, 462 S.W.3d 358, 359 (a written order supersedes an oral ruling in juvenile-delinquency cases); *Nat'l Home Ctrs., Inc. v. Coleman*, 370 Ark. 119, 121, 257 S.W.3d 862, 863 (2007) ("Simply put, the written order controls.") (civil case).

The lone case on which our dissenting colleague primarily relies, *Gholson v. State*, 2009 Ark. App. 373, 308 S.W.3d 189, is not like this one. In *Gholson*, the prosecuting attorney had presented a twenty-nine-page list of stale cases to the court that the prosecutor wanted to nolle prosequi. Gholson's probation-revocation case was erroneously included in the laundry list of dismissed cases. 2009 Ark. App. 373, at 5, 308 S.W.3d at 191. During the probation-revocation hearing, Gholson did not know that his case had been dismissed. Based on the facts developed in the circuit court and presented during the posttrial hearing that was held by the circuit court, this court held that the "nolle prosequi" disposition was a clerical error induced by the prosecutor, which the circuit court could correct with a nunc pro tunc order. *Id.* at 4, 308 S.W.3d at 191.

But this case is different. Here, the circuit court did not hold an evidentiary hearing on a defendant's posttrial motion. Here, the court did not enter a nunc pro tunc order based on a scrivener's error—*not even after Ransom had raised the issue in circuit court before this appeal was filed*. Moreover, we see no good legal reason to ask, as the dissent does, whether Ransom thought he was on probation when determining his probationary status. A defendant's subjective state of mind does not determine the legal effect of a court's written judgment.

Criminal judgments are construed like any other instrument. *Lewis v. State*, 336 Ark. 469, 986 S.W.2d 95 (1999). Having looked within the four corners of the March 2015 judgment and having read the plain language within, the circuit court revoked Ransom's

probation and sentenced him to jail as punishment for violating his probation's terms. The judgment does not extend probation as punishment for a violation. It could have done so, but it did not. We also point out that both the circuit court and the prosecutor put pen to paper and signed the March 2015 judgment. This case's disposition in circuit court was not the result of a clerical error that seeped into a "cattle call" case-disposition event, as so clearly happened in *Gholson*.

To conclude, in March 2015 the circuit court could have imposed any sentence allowed on the underlying 2012 offenses. Ark. Code Ann. § 16-93-308(g)(1) (Supp. 2017). But the court did not do so. Instead, it sentenced Ransom to serve thirty days in the Faulkner County Detention Center. Ransom's probation was revoked, a jail-time sentence was imposed, and the court neither incorporated any term or condition of Ransom's original probation; nor did it impose an additional term of probation. Under Arkansas law, Ransom was no longer on probation when the State filed its petitions to revoke in 2017 and the court entered the related judgments that generated this appeal. *See* Ark. Code Ann. § 5-4-101(2) (Repl. 2013) (defining probation). The circuit court therefore lacked the power in 2018 to enter a judgment against Ransom in case numbers 473 and 1001. We must therefore vacate the 2018 sentencing orders entered in these cases and dismiss them.

Reversed and dismissed.

GRUBER, C.J., and SWITZER, WHITEAKER, and VAUGHT, JJ., agree.

KLAPPENBACH, J., dissents.

**N. MARK KLAPPENBACH, Judge, dissenting**. I respectfully dissent. Citing *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325, for the proposition that the written judgment controls over the oral ruling, the majority proclaims "[e]nd of story." The very next sentence in *Vance*, however, demonstrates that this is not the end of the story in the case of a scrivener's error. *Vance* provides as follows:

> When there is a discrepancy between the judgment and commitment order and the pronouncement of sentence, it is the entered judgment and commitment order that controls. However, we note that clerical errors do not prevent enforcement of a judgment, and that a circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment or order.

*Vance*, 2011 Ark. 243, at 35, 383 S.W.3d at 347 (citations omitted). In *Vance*, the circuit court pronounced from the bench a sentence of life imprisonment for the offense of rape, but the judgment and commitment order reflected a sentence of only 480 months. The supreme court held that this appeared to be a scrivener's error rather than a reduction in sentence and noted that the circuit court could enter an order nunc pro tunc at any time to correct such an error.

A circuit court can enter an order nunc pro tunc at any time to correct clerical errors for the purpose of making the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. *Parmley v. State*, 2011 Ark. App. 685. Because clerical errors do not speak the truth, courts have the power to enter an amended judgment and commitment order nunc pro tunc to correct an erroneous judgment. *Id.* The majority acknowledges that the circuit court orally extended Ransom's probation and ordered that he serve

thirty days in the county detention center.[1]  I agree with the State that the absence of a checkmark on the subsequently entered written order was merely a mistake that may be corrected.

In *Gholson v. State*, 2009 Ark. App. 373, at 5, 308 S.W.3d 189, 191–92, this court noted "the wisdom in recognizing the trial court's inherent power to correct erroneously entered judgments, particularly when the appellant is fully aware of the nature of the proceedings."  Even though the erroneously entered order in *Gholson* had left the circuit court with no jurisdiction to revoke, we affirmed the order setting it aside after the revocation.  Ransom, like Gholson, was unaware of the erroneous order at the time of his revocation hearing.  As *Gholson* demonstrates, it is not too late to make the record speak the truth.  Accordingly, I would remand for clarification and correction of the sentencing order.

*Ryan C. Allen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[1]This order appears to be an order that Ransom serve a period of confinement as a condition of his probation as authorized by Arkansas Code Annotated section 5-4-304.