

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-16-100

|  |  |  |
| --- | --- | --- |
|  |  | **Opinion Delivered**  October 26, 2016 |
| MARK S. LEWIS | APPELLANT | APPEAL FROM THE CLAY COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. CR-2013-67] |
| V. |  |  |
|  |  | HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Mark Lewis appeals the Clay County Circuit Court's order revoking his probation. His only argument on appeal is that the trial court erred in not ordering, sua sponte, a competency evaluation. We affirm.

In May 2014, Mark pled guilty to furnishing prohibited articles pursuant to Arkansas Code Annotated section 5-54-119 (Supp. 2013) and was sentenced to five years' probation. Mark was ordered to pay $1,170 in fines, fees, and costs at the rate of $75 per month. The State filed a petition for revocation of Mark's probation in 2015, followed by an amended petition that alleged he had violated the terms and conditions of probation by failing to make any payments as ordered and having committed the crimes of disorderly conduct, criminal mischief, and two counts of aggravated assault on a family member.

At the revocation hearing, Della Jackson testified that she worked for the Eastern District of Clay County collecting payments for the circuit court. She stated that Lewis had never made any payments.

Norma Jean Lewis testified that she was Mark Lewis's mother. She testified that, during the time period relevant to this case, Mark resided in her home, as did her two grandsons who were fourteen and three years old. She stated that on May 3, she had awakened to noises in the house and had found her grandson's "pillow pet" in the hallway "in shreds." She then found Mark in his bedroom speaking gibberish. She went to the living room where she found her leather sofa cut up and stuffing strewn around the room. There was also a picture knocked off the wall, and the frame was broken. She testified that Mark had denied destroying the sofa, but she did not believe him because there was no one else in the house at the time except her three-year-old grandson. She stated that she went to the sheriff's office and reported the incident and told them that she wanted Mark out of her house. She stated that she had not been threatened or harmed by Mark. She also stated that no one else in the home used methamphetamine except possibly Mark, but then explained on cross-examination that her other son, Jason, who previously used the room Mark was using, had a history of methamphetamine usage.

Officer Sam Poole testified that when he arrived at Norma Lewis's home, the living room and bedroom were in "shambles" and that he observed a knife in the couch cushion. He also stated that Mark was talking "out of his head." Poole testified that, after he arrested Mark, Ms. Lewis brought two spoons and a syringe to the station, alleging that they must belong to Mark.

Mark Lewis testified that he understood the nature of the revocation proceedings and that he did not have to testify on his own behalf. He admitted cutting up the leather sofa, stating that he was looking for a piece of paper that contained information about a girl who had been missing since approximately 1988 or 1989. Mark reasoned that the couch had been purchased for less than $200 approximately nine years ago and was not in good condition and that he could replace it after he cut it up looking for the piece of paper. He explained that he had then accidentally knocked the picture off the wall while trying to clean up.

Mark denied that the methamphetamine was his, stated that his brother had been using that room, and stated that he had asked for a drug test that he never received. He then testified about the events surrounding his underlying charge for furnishing a prohibited item and discussed his efforts to obtain a lawyer for that charge. The State objected to the relevance of the testimony, and the court sustained the objection.

At one point in his testimony, Mark spontaneously stated, "You know, I'm off my meds." He testified he had been on Celexa and Adderall but that approximately a month before the hearing he had stopped receiving his medications while incarcerated.

Mark attributed both the drug paraphernalia and the messy condition of the house to his brother, who had been staying in Mark's bedroom a few months prior to the incident and who had a history of methamphetamine use.

Mark then testified as to his previous convictions and criminal history, including forgery convictions and methamphetamine possession. He stated that he had three felony convictions and four convictions total. He acknowledged that he was a habitual offender. Mark testified that he had signed the terms and conditions of his probation in 2013, that they had

3

been presented to him by his attorney, and that they had included a payment schedule for his required payments. He then testified about previous proceedings before a different judge in a different case, in which he also apparently had a payment schedule.

In closing, Mark's attorney stated that Mark had admitted he had destroyed the sofa but that he had thought the paper he was looking for was more important than the sofa and that he could replace the sofa. He also argued that the new offense, if Ms. Lewis's testimony was believed, would only be a misdemeanor.

The court found that Mark had violated the terms and conditions of his probation by (1) failing to pay his fines, fees, and costs as ordered; (2) destroying his mother's couch; and (3) possessing drug paraphernalia.[1] The court sentenced Mark to sixty months' imprisonment followed by twenty-four months' SIS. The court then entered a written sentencing order, and Mark filed a timely notice of appeal.

A circuit court may revoke a defendant's probation prior to expiration if the court finds by a preponderance of the evidence that the defendant inexcusably failed to comply with a condition of his or her probation. Ark. Code Ann. § 16-93-308 (Supp. 2015); *Miller v. State*, 2011 Ark. App. 554, at 11, 386 S.W.3d 65, 71. Evidence that would be insufficient for a new criminal conviction may be sufficient for the revocation of probation. *Lamb v. State*, 74 Ark. App. 245, 45 S.W.3d 869 (2001). The State bears the burden of proof, but it need only prove that the defendant committed one violation of the conditions of probation. *Majors v. State*,

---

[1]The revocation petition and the amended petition did not allege that Mark had violated the terms and conditions of his probation by using or possessing drugs or drug paraphernalia. However, the court included such a finding in its ruling from the bench. Mark neither made any argument to the trial court about the fact that the petition contained no drug allegations nor argued this point on appeal. Therefore, we do not address it.

SLIP OPINION

2012 Ark. App. 501, at 4. In *Ferguson v. State*, 2016 Ark. App. 4, at 3, 479 S.W.3d 588, 590, we explained that "[o]n appeal, we will not reverse the trial court's decision to revoke unless it is clearly erroneous, or clearly against the preponderance of the evidence." Moreover, we must defer to the superior position of the trial court to determine questions of credibility and the weight to be given the evidence. *Id.*, 479 S.W.3d at 590.

Mark's only point on appeal is that the trial court erred in not questioning, sua sponte, his competency to stand trial and not ordering a competency evaluation. Mark acknowledges that he never raised this issue below, but he argues that we should address it on appeal because the trial court had an obligation to raise it sua sponte even if his counsel failed to do so. Mark relies on a short line of cases applying federal due-process analysis and finding that it violates a defendant's Fourteenth Amendment due-process rights if the court fails to sua sponte raise the issue of competency when there is evidence raising a reasonable doubt as to his fitness to proceed. *Speedy v. Wyrick*, 702 F.2d 723 (1983); *Porta v. State*, 2013 Ark. App. 402, at 5–6, 428 S.W.3d 585, 588. In *Porta*, we explained that

> [a] contemporaneous objection is generally required to preserve an issue for appeal, even an issue of constitutional dimensions. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). Citing *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), we explained in *Vilayvanh v. State*, 2012 Ark. App. 561, 2012 WL 4833805, that it is possible, under very rare and extreme circumstances, that a trial court may be obliged to intervene *sua sponte* to correct a serious problem. Once such circumstance occurs when there is a reasonable doubt about the defendant's competency to stand trial, as discussed in *Jacobs v. State*, 294 Ark. 551, 553–54, 744 S.W.2d 728, 729–30 (1988):
>
>> The conviction of an accused person while he is legally incompetent violates due process. *Pate v. Robinson*, 383 U.S. 375 [86 S. Ct. 836, 15 L. Ed. 2d 815] (1966). *See also* Ark. Code Ann. § 5-2-302 (1987).

*Porta*, 2013 Ark. App. 402, at 5–6, 428 S.W.3d at 588 (quoting *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)). Neither *Speedy* nor *Porta* was a revocation case.

5

However, although in a revocation hearing a defendant is not entitled to the full panoply of rights that attend a criminal prosecution, he is entitled to due process. *Ryan v. State*, 2016 Ark. App. 105, at 5, 484 S.W.3d 689, 693 (citing *Goforth v. State*, 27 Ark. App. 150, 152, 767 S.W.2d 537, 538 (1989)). Because due process is a flexible concept, each particular situation must be examined in order to determine what procedures are constitutionally required. *Hill v. State*, 65 Ark. App. 131, 132, 985 S.W.2d 342, 342 (1999).

Pursuant to *Porta*, a due-process evidentiary hearing is constitutionally compelled whenever there is substantial evidence that the defendant may be mentally incompetent to stand trial.

> "Substantial evidence" is a term of art. "Evidence" encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is "substantial" if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court in applying *Pate*'s substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? Its sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue.

*Porta*, 2013 Ark. App. 402, at 6, 428 S.W.3d 585, 588 (citing *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)). Although the Supreme Court has not prescribed exact standards as to the quantum or nature of the evidence necessary to require a competency hearing, the Court has indicated that consideration of evidence relating to "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial" is appropriate. *Id.* at 6, 428 S.W.3d at 588.

In this case, as in *Porta*, the court was not presented with substantial evidence calling into question Mark's competency to stand trial. In order to be competent to stand trial, a defendant must have the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. *Porta*, 2013 Ark. App. 402, at 6, 428 S.W.3d at 588. Here, while Mark's stated reasons for destroying his mother's sofa and his denials of wrongdoing were unpersuasive, they were not, as his counsel asserts, "incoherent . . . word salad." While Mark mentioned that he was "off his meds," Celexa and Adderall, the court was presented with no evidence or testimony regarding the effect of those medications. His behavior, if odd, did not rise to the level of irrational; he testified coherently, provided direct responses to each question, stated the reasons for his actions, and provided alternative explanations for some of the State's allegations against him. He stated that he had received the terms and conditions of his probation, had gone over them with his attorney, and that he understood the nature of the current revocation proceedings. There is no evidence to suggest incompetency other than the fact that he had an unusual speech pattern, rambled, and testified to irrelevant matters. This is insufficient, under *Porta*, to require the court to sua sponte halt the proceedings and order a competency evaluation. Therefore, Mark cannot avail himself of the narrow exception established in *Porta* and *Speedy* to the general rule that the appellate court will not address arguments raised for the first time on appeal. *Gilliland v. State*, 2010 Ark. 135, at 10, 361 S.W.3d 279, 285. Because Lewis failed to raise the issue of competency below, and because the record does not support the conclusion that the trial court was obligated to raise it sua sponte, we affirm.

Affirmed.

KINARD and GRUBER, JJ., agree.

*David O. Bowden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee