2010 Ark. 135

**Michael Wayne GILLILAND, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–969.**

Supreme Court of Arkansas.

March 18, 2010.

Louis L. Loyd, Malvern, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

Appellant Michael Gilliland was originally charged in July 2008 with two counts of rape and one count of second-degree sexual assault. The affidavit for warrant of arrest indicated that the victim, his fourteen-year-old stepdaughter M.M., reported that he had sexually assaulted her. After Gilliland was charged, the information was later amended to drop one of the rape charges. He was convicted on both remaining charges and sentenced to life on the rape conviction and twenty years' imprisonment on the sexual assault conviction.

On appeal, Gilliland raises two arguments. First, he contends that the trial court abused its discretion in allowing the State to introduce rebuttal testimony that did not relate to the offenses for which Gilliland was on trial. In his second point, he urges that there was insufficient evidence to support his rape conviction.

Although Gilliland raises it as his second point on appeal, double-jeopardy concerns require this court to review his sufficiency-of-the-evidence argument first. *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289; *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. Our standard of review for a sufficiency challenge is well settled. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Rounsaville v. State*, 372 Ark. 252, 273 S.W.3d 486 (2008); *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *Rounsaville v. State, supra.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Gilliland was charged with rape under Arkansas Code Annotated section 5–14–103(a)(4)(A)(i) (Repl.2006), which provides that a person commits rape if he engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen years of age and the actor is the person's guardian.[1] At the conclusion of the trial, the State amended the information to delete the portion of the information that charged him with "engaging in sexual intercourse." Thus, the jury considered only the charge of rape by engaging in deviate sexual activity. "Deviate sexual activity" is defined as "any act of sexual gratification involving ... [t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark.Code Ann. § 5–14–101(1)(B) (Repl.2006). In considering the sufficiency of the evidence in a

---

1. Alternatively, Gilliland was charged with rape pursuant to Arkansas Code Annotated section 5–14–103(a)(1) (Repl.2006), which provides that a person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. The circuit court granted Gilliland's motion for directed verdict as to the forcible-compulsion aspect of the charge and denied it with respect to whether Gilliland was M.M.'s guardian. On appeal, Gilliland challenges only the sufficiency of the evidence of penetration and does not challenge the court's denial of his directed-verdict motion in any other respect. Therefore, we need not address whether there was sufficient evidence to show that he was a guardian, because arguments not made on appeal are considered waived. *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996).

rape case, this court has repeatedly held that the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *See Lamb v. State,* 372 Ark. 277, 275 S.W.3d 144 (2008); *Butler v. State,* 349 Ark. 252, 82 S.W.3d 152 (2002); *Williams v. State,* 331 Ark. 263, 962 S.W.2d 329 (1998).

▇ In both his directed verdict motions and in his argument on appeal, Gilliland argues that there was insufficient proof of penetration. He notes that he was specifically accused of digitally penetrating the victim, M.M., and he urges that there was "little [or] no evidence that he ever penetrated the anus or labia majora of the victim."

The victim, M.M., was sixteen at the time of the trial. She testified that Gilliland and her mother married when she was five years old, and that he was the only daddy she had ever known. She said that there were occasions when he would get in bed with her. At first, he would "just crawl into bed with [her] and cuddle," but he subsequently began touching her vagina. This behavior started when she was about six years old, and although the activity lessened as she got a little older, it happened more often as she reached her teenage years. During one exchange with the prosecutor, M.M. described Gilliland's actions as follows:

Q: Okay, were there any occasions ... where he would inappropriately touch your body?

A: Yes, I mean, when he'd laid with me.

Q: Where would he touch you?

A: On my breasts and vagina.

Q: Describe how he would touch your breasts?

A: He would rub them in like a circle motion. And he would touch my butt, too.

Q: And how would he touch your vagina?

A: With his fingers in and out.

Q: You mean he would insert his finger inside of you?

A: Uh-huh.

M.M. also stated that he would masturbate while he was touching her on her vagina, and that it happened almost every night between 2005 and 2008.

As noted above, the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. M.M. testified that Gilliland inserted his finger into her vagina, which clearly satisfies the statutory elements of rape.[2] That is, he engaged in deviate sexual activity by penetrating the labia majora of a person with a body member. Although Gilliland claims in his brief that "she never stated that he inserted his finger inside her," but only "responded to questioning by the State," the above colloquy makes clear that he engaged in deviate sexual activity with M.M. The victim's testimony was plain and unambiguous that he digitally penetrated her, and therefore, we hold that there was sufficient evidence to sustain Gilliland's rape conviction.

In what is actually Gilliland's first point on appeal, he contends that the trial court abused its discretion in allowing rebuttal testimony that did not relate to the offenses for which he was on trial. He contends that the State improperly used rebuttal testimony to introduce evidence of

---

**2.** As mentioned above, Gilliland does not challenge the sufficiency of the evidence showing that he was M.M.'s guardian.

prior bad acts that were irrelevant to the rape charges and thus unduly prejudicial. Moreover, he urges that the testimony was not truly rebuttal in nature, and the State elicited testimony from him during cross-examination during his case-in-chief solely for the purpose of being able to introduce the damaging rebuttal evidence.

During its case-in-chief, the State called both M.M. and J.M., M.M.'s older sister. M.M. testified about how Gilliland would touch her inappropriately. It began as "cuddling," she said, and progressed to him touching her vagina, as described above. In addition to the sexual abuse, M.M. said that Gilliland got her started drinking alcohol and smoking marijuana when she was twelve years old. M.M. said that after Gilliland got her started on drugs, he told her that he would not "feed [her] addiction" if she told anyone about the abuse. She stated that he would give her alcohol almost every night and marijuana every day after school. On redirect examination, M.M. said that she had seen Gilliland's penis on one occasion when he was "cracked out" on methamphetamine. She said that she had seen Gilliland cooking methamphetamine, and further explained that he would ask her to help by "shuck[ing] matches."

J.M. testified that she would see Gilliland and M.M. "cuddling" under the covers and stated that sometimes Gilliland would sleep with M.M. in her bed while the girls' mother was at work. She also stated that Gilliland had bought alcohol for her and her sister.

Gilliland testified on his own behalf during his case-in-chief. He stated that he met M.M. and J.M.'s mother, M.L., in 1998 and they moved in together, living together for about six to eight months before he was sent to prison on a parole violation. When he got out of prison in 2000, he and M.L. married. Over the next few years, he was in and out of prison some more, but when he got out in 2005, he moved back in with her. They lived together until July or August of 2007, when he said he moved out again because of their constant arguing.

Gilliland denied touching M.M. inappropriately or getting into bed with her. He denied getting M.M. addicted to drugs or alcohol, stating that she and her sister had been stealing marijuana from him. He also denied knowing how to cook methamphetamine, although he admitted using the drug. He further denied sexually abusing M.M., and suggested that she was "telling this story" because his marriage to her mother was rocky. He said he did not know why they would make up such a story unless perhaps they had gotten the suggestion from their aunt, who was a probation or parole officer, and who might have told them that the rape charges would "be the easiest way to have [him] locked up so they wouldn't never have to worry about [him] anymore."

On cross-examination, Gilliland acknowledged that he was convicted in 1992 for selling methamphetamine. He also testified that, at one point during his marriage, his wife was also addicted to methamphetamine. He denied, however, that he was making and selling the drug.

The State then asked Gilliland whether he had ever threatened the girls by telling them that he was going to "pimp them out" to his friends. In response to this question, Gilliland described a family trip to Virginia to help out his wife's sister. He said that once they got there, they were staying on a military base, and because he had been seen smoking marijuana, the military police got involved. While the police were searching his car and room, he said that J.M. told the police that she had been the victim of sexual abuse. The local police were called, and although

they found nothing to support J.M.'s allegations, the family was asked to leave the military base.

Gilliland said that he was angry with J.M. because he thought "all she was trying to do really was to work out a way to stay with her [aunt] in Virginia for the summer." He became very angry with her and threatened her that if she didn't straighten up, he was "going to go talk to some of [his] black guys and have her straighten[ed] out." During the drive back from Virginia, he punished J.M. by confining her to the car. He denied not allowing her to eat, and said that if she or her mother said that had happened, it would be a lie. Later in his cross-examination, he also denied knowing how to cook methamphetamine, having either of the girls help him manufacture the drug, or ever supporting the family by selling drugs.

After the defense rested and renewed the motions for directed verdict, the court asked the State if it had any rebuttal testimony. The following colloquy ensued:

COURT: They're going to call rebuttal, are you going to do the same?

DEFENSE: What is he going to call—rebuttal?

COURT: Rebuttal.

STATE: The testimony—

DEFENSE: Which part of—

STATE: The part about him making dope to support them when she—

DEFENSE: That's a side issue, Judge, that's not subject to rebuttal—

STATE: It certainly goes to whether he's lying or not. If he's lying about one thing, he can be lying about everything.

DEFENSE: That's a side issue, it does not go to the main fact of this issue.

COURT: Well, the door has been opened and it's been discussed openly, so I think it's only appropriate that you be allowed to rebut with testimony.

The State then recalled J.M. to the stand. J.M. described the trip to Virginia that Gilliland had mentioned during his cross-examination by the State. She went into great detail about how Gilliland had punished her on the drive back from Virginia to Arkansas, saying that he refused to let her out of the car, refused to let her have anything to eat or drink, threw away all of her clothing and possessions, and threw a bottle at her. In addition, the State called Gilliland's ex-wife M.L., who corroborated J.M.'s version of events. M.L. also stated that Gilliland had learned how to cook methamphetamine and had begun selling it.

On appeal, Gilliland argues that the State used J.M. and M.L.'s rebuttal testimony about the trip to Virginia to unfairly prejudice him. He posits that he was only charged with rape, not any drug-related offenses or any other kind of child maltreatment, and thus, because the State's elicitation of the above-described testimony had nothing to do with the offenses for which Gilliland was standing trial, he was unduly prejudiced. He further argues that the use of the testimony violated both Arkansas Rule of Evidence 403 and Arkansas Rule of Evidence 404(b), and he contends that the testimony was not truly rebuttal in nature. Finally, Gilliland contends that the State's use of the testimony violated *Kincannon v. State*, 85 Ark.App. 297, 151 S.W.3d 8 (2004), in which the court of appeals held that, while the State may cross-examine the defense's witnesses regarding the scope of the defendant's involvement in a crime, it is not allowed to *elicit* testimony that *necessitates* rebuttal testimony. *Kincannon*, 85 Ark.App. at 304, 151 S.W.3d at 12 (emphasis in original).

We conclude that Gilliland's arguments are largely unpreserved for our review. During the entirety of the State's rebuttal case, the defense objected only twice. The first objection was that J.M.'s testimony was rambling and nonresponsive, and the second was that M.L.'s testimony had gone beyond the scope of the prosecutor's questions. Both objections were sustained.

As noted above, Gilliland's only objection to the State's introduction of the rebuttal testimony was that the evidence about his manufacturing methamphetamine to support the family was a "side issue" that was not subject to rebuttal. While it is true that objections need not cite specific rules to be sufficient, this court has made clear that a specific objection is necessary in order to preserve an issue for appeal. *Ellison v. State*, 354 Ark. 340, 123 S.W.3d 874 (2003); *Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001). To preserve an argument for appeal, there must be an objection to the trial court that is sufficient to apprise the court of the particular error alleged, and the appellate court will not address arguments raised for the first time on appeal. *Ellison, supra; Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997).

In this case, it is apparent that Gilliland did not raise a specific objection that the rebuttal testimony—either the drug-related testimony or testimony about the trip to Virginia—violated Rule 403 or 404(b), nor did he argue below that the State was improperly eliciting testimony that would necessitate rebuttal testimony in contravention of *Kincannon*. Accordingly, these arguments are not preserved for appellate review.

The only argument that we conclude is preserved is Gilliland's claim that the methamphetamine testimony introduced as rebuttal was not truly rebuttal, because the issue of whether he sold methamphetamine, which he argued at trial was a "side issue," had nothing to do with whether he had committed the offenses of rape and sexual assault. Genuine rebuttal evidence consists of evidence offered in reply to new matters. *Pyle v. State*, 314 Ark. 165, 178, 862 S.W.2d 823, 830 (1993) (citing *Birchett v. State*, 289 Ark. 16, 708 S.W.2d 625 (1986)). Evidence can still be categorized as genuine rebuttal evidence even if it overlaps with the evidence in chief. However, the evidence must be responsive to that which is presented by the defense. *Pyle*, 314 Ark. at 178–79, 862 S.W.2d at 830. It is within the trial court's discretion whether to admit rebuttal testimony, and the appellate court will not reverse this determination absent an abuse of that discretion. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996); *Kincannon v. State, supra.*

Here, when the court asked if the State had any rebuttal, the State explained that it intended to rebut "the part about him making dope to support them." Gilliland testified on direct examination, as part of his case in chief, that he knew how to use methamphetamine, but did not know how to make the drug. Thus, when the State declared that it intended to introduce testimony that Gilliland was manufacturing methamphetamine in order to dispute his credibility, the stated purpose of the rebuttal testimony was to respond to evidence that had been presented by the defense.

It is true that the State elicited much more testimony during its rebuttal than simply evidence about Gilliland's drug manufacturing, including the testimony

about how he mistreated J.M. on the trip to Virginia. Gilliland, however, never objected to any of this particular testimony as going beyond the proper scope or bounds of rebuttal. Therefore, his argument to this court—i.e., that this specific evidence was not relevant to the crimes with which he was charged—is being raised for the first time on appeal, which means we must decline to address it. *See, e.g., Davis v. State,* 368 Ark. 401, 409, 246 S.W.3d 862, 869 (2007) (Issues must be presented to the circuit court in order to be preserved for appeal, and we will not address arguments that are raised for the first time on appeal.); *Standridge v. State,* 357 Ark. 105, 161 S.W.3d 815 (2004).

Gilliland was sentenced to life in prison. Pursuant to Ark. Sup.Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.