Cite as 2020 Ark. App. 142

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR–19–607

|  |  |  |
|---|---|---|
| | | **OPINION DELIVERED:** FEBRUARY 26, 2020 |
| SCOTTY JOE SCAGGS | | |
| | APPELLANT | APPEAL FROM THE MARION COUNTY CIRCUIT COURT [NO 45CR-17-61] |
| V. | | |
| | | HONORABLE JOHN R. PUTMAN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Scotty Joe Scaggs appeals his conviction in the Marion County Circuit Court. A jury found him guilty of sexual indecency with a child, sexual assault in the second degree, and sexual assault in the first degree, and the court sentenced him to an aggregate term of twenty years' imprisonment. Scaggs's appeal addresses the sufficiency of evidence regarding only first-degree sexual assault, and he also challenges the circuit court's admission of evidence pursuant to Rule 404(b) of the Arkansas Rules of Evidence 2019. We affirm.

### I. *Facts*

Scaggs was charged by information alleging that he caused a female child, less than fourteen years old, to dance while naked and also engaged in deviate sexual activity with her. Scaggs was also accused of engaging in deviate sexual activity with a fifteen-year-old male. Before the jury trial on these charges, the State sought an evidentiary ruling on testimony it wished to introduce about Scaggs's prior acts of a sexual nature, arguing that the evidence was admissible under Rule 404(b).

J.T., age twenty-three, testified that Scaggs is her father. She described an escalation of sexual contact with Scaggs that began when she was nine years old. She said that she was age ten or eleven when he first penetrated her with his fingers and his penis. She described Scaggs's supplying alcohol to her during these years as well. She said that the last time penetration occurred, she was fifteen and a half years old, and she thought that he had impregnated her, but he had not. She said that she told her mother at that time, and law enforcement interviewed her, but no charges were filed. The circuit court ruled that this evidence was admissible under Rule 404(b).

At the jury trial, A.T., age eighteen, testified that when she was seven years old, she stayed at Scaggs's house one night. Scaggs is her great uncle, and her cousins had asked her to stay there following a family gathering. She said that all the adults had left except for Scaggs, and he asked them to play "Truth or Dare." She said that Scaggs told the girls to strip naked and run back and forth throughout the house in front of him and the boys. She said that Scaggs "had us kiss our cousins and girls. And if the boys didn't watch then they were locked in the closets and bathrooms in the dark." She said that Scaggs was drunk and that he made the girls—her, J.T., S., and S.—go with him into the bedroom, strip naked, and dance on top of the dresser. She said that he also made the girls sleep in the bed with him that night, and he tried to put his fingers inside her vagina. She said that she got away from him, told him no, and got "in the floor." She said Scaggs told them if they ever came forward that he would severely punish them.

D.M., age twenty-six, testified that he had been Scaggs's neighbor, had been hunting with Scaggs, and had dated J.T. He said that when he was fifteen years old, he stayed the night at Scaggs's house with J.T., her sisters, and Scaggs. He said that Scaggs had been the

2

only adult present and that they drank alcohol. He said after drinking for a couple of hours, everyone went to bed. He said that J.T. called him to her room, where she and Scaggs "announced the situation." D.M. said,

> [Scaggs] had J.T. ask me if I wanted her to give me an HJ, which I think she was using slang for a hand job. And then J.T. asked if I let him put his mouth on my penis and eat her out. And I panicked, of course, and didn't know what to do. All of what I said ended up taking place, and I—halfway through I blacked out. And it's just not something you forget.

D.M. said that when an investigator first asked him about this incident six or seven months after it had occurred, he lied and said that nothing happened because he did not want anyone to know. D.M. said that when he was contacted again in 2017, his perspective changed because he felt bad about not coming forward a long time ago. D.M. said that after the incident, he never went hunting with Scaggs or spent the night at his house again.

J.T. testified that Scaggs is her father and corroborated A.T.'s and D.M.'s testimony. Before J.T. testified regarding the proposed Rule 404(b) evidence, Scaggs's defense counsel asked for a limiting instruction for the jury, and the circuit court agreed to instruct on AMI Crim. 2d 203-A. The court and counsel settled on the following language as part of the instruction: "This evidence is merely offered as evidence of motive and proclivity towards a specific act with minor children."

J.T. then testified that her sexual contact with Scaggs began when she was nine years old, and it continued until she was fifteen years old. She explained that her mother worked late nights and was not home and that Scaggs would be drinking. She described the escalation of sexual contact with Scaggs, which began with him touching himself and playing with her vagina and then progressed from oral penetration to vaginal and anal intercourse. She said,

3

It happened until I was 15. It happened all the way through my parents' divorce and through their separation. It happened at every house he lived in after that. It got to where it would happen every weekend, because we went over there every weekend. Every weekend he would buy alcohol and scary movies and things like that and we would all drink and party. I mean, nine, ten years old, we would all drink and party, and it would happen every time.

There were no adults in the house while anything was happening. And he was not always drunk when it happened. There was several times where he would go and take a nap and things would happen then. He would tell me to go lay down with him while he took a nap, and things would happen at that point.

J.T. said that when she was fifteen years old, she "told" because she mistakenly thought she was pregnant. She said that she gave an "interview" and related the situation with D.M., but she did not mention anything about the episode with A.T. On cross-examination, she admitted that she first told the Child Advocacy Center that Scaggs had been forceful the "first time" and that he had picked her up and thrown her on the bed. She said that this was what she told herself for a long time because it was easier for her to believe that "it was forced" than for her to accept that she just lay there and pretended like nothing was happening. A video recording of her interview was played for the jury, and she admitted that she had been untruthful in it.

At the close of the State's evidence, Scaggs's defense counsel moved for a directed verdict. Counsel argued regarding first-degree sexual assault that the State had to prove Scaggs was in a position of trust or authority over D.M. and that there had been insufficient evidence to support that conclusion. Counsel argued that D.M. had been at Scaggs's house "hanging out with his girlfriend" and that D.M. testified that Scaggs was not his chaperone or babysitter and that his parents did not know or arrange for him to be at Scaggs's house. The circuit court denied the motion. The motion was renewed and denied at the close of the defense's case.

4

The State proposed a jury instruction containing the definition of "a person in position of trust or authority" and in regard to "temporary caretaker." Scaggs's defense counsel objected. The circuit court denied the instruction and allowed the State to proffer it. The jury returned a guilty verdict on all three charges, and the circuit court sentenced Scaggs to imprisonment for concurrent terms of twenty years for sexual assault in the first degree, ten years for sexual assault in the second degree, and five years for sexual indecency with a child. Scaggs filed a timely notice of appeal, and this appeal followed.

## II. *Sufficiency of the Evidence*

To be guilty of sexual assault in the first degree under Arkansas Code Annotated section 5-14-124(a)(1)(D) (Supp. 2019), a person must have engaged in sexual intercourse or deviate sexual activity with someone under eighteen years of age who is not the actor's spouse, and the person must have been a temporary caretaker or in a position of trust or authority over the victim.

> A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Estrada v. State*, 2011 Ark. 3, 376 S.W.3d 395. The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, appellate courts review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

> A sexual-assault victim's testimony may constitute substantial evidence to sustain a conviction for sexual assault. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). The victim's testimony need not be corroborated, and the victim's testimony alone, describing the sexual contact, is enough for a conviction. *See Colburn v. State*, 2010 Ark. App. 587. The credibility of witnesses is a matter for the jury's consideration. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008). Furthermore,

the jury need not believe the defendant's own self-serving testimony, and it is free to believe all or part of a victim's testimony as it sees fit. *See Chavez v. State*, 2010 Ark. App. 161.

*Halliday v. State*, 2011 Ark. App. 544, at 1–2, 386 S.W.3d 51, 53 (holding that sufficient evidence supported conclusion that defendant was in a position of trust or authority over child victim and that he was a temporary caretaker of victim as necessary to support conviction for first-degree sexual assault; defendant was, at a minimum, a chaperone or babysitter for victim in that victim testified that defendant, who taught her to ride horses for rodeos, was like a teacher to her and that she looked up to and trusted him; she also testified that when she was 14 years old, defendant drove her to his living quarters after a day of horse training, and that he had sexual intercourse with her; and victim's father testified that he trusted defendant as the adult watching his daughter).

Scaggs argues that the circuit court erred by denying his motions for directed verdict. He contends that the evidence on the question whether he acted as a caretaker or was in a position of trust or authority over D.M. merely gave rise to a suspicion and could not have been viewed as anything more than conjecture. Scaggs argues that D.M. repeatedly indicated that Scaggs was not in a position of authority, and the State elicited testimony from D.M. that he was a guest in Scaggs's home. He argues that no other witness testified about the relationship between D.M. and Scaggs.

Although the circuit court disallowed the State's proposed definitions of "a person in a position of trust or authority" and "temporary caretaker" under *Halliday*, *supra*, Scaggs argues that *Halliday* is distinguishable. He asserts that the victim in *Halliday* was no older than fourteen years old and could not drive and that the defendant was specifically placed in a position to teach the victim. *Halliday*, 2011 Ark. App. 433, at 4, 386 S.W.3d at 54.

6

Further, the victim's father testified that he trusted the defendant as the adult watching his daughter. *Id.* In contrast, Scaggs contends that he was in no position of trust and that D.M. was at least fifteen or sixteen years old. Scaggs claims that it is possible that D.M. had the ability to drive but, regardless, D.M. was not driven to a separate and discreet location like the victim in *Halliday*. *See id.* Scaggs argues that D.M. was at his house to see J.T., not to see him or be taught by him. Scaggs further argues that during the alleged incident, D.M. could have left at any time.

Scaggs cites *Bowker v. State*, 363 Ark. 345, 214 S.W.3d 243 (2005), and *Murphy v. State*, 83 Ark. App. 72, 117 S.W.3d 627 (2003), both of which discuss the term "caretaker" and involve parents entrusting care of their child with family friends who victimized the child. Scaggs contends that, unlike these cases, there was no testimony herein from D.M.'s parents. Further, there were no assurances given to D.M.'s parents, as was the case in *Murphy*. Scaggs claims that the jury was not presented evidence to consider in determining its own view of what level of care constitutes a person in the position of trust or authority. He insists that the only evidence here was D.M.'s testimony that Scaggs was not his babysitter.

We agree with the State's contention that substantial evidence supports Scaggs's conviction for first-degree sexual assault of D.M. The phrase "a person in a position of trust or authority over the victim" is not defined by statute. Nonetheless, appellate courts have held that being a babysitter or chaperone is sufficient to establish that a person is in a position of trust or authority over a victim. *See, e.g.*, *Nelson v. State*, 2011 Ark. 429, 384 S.W.3d 534; *Rowland v. State*, 2017 Ark. App. 415, 528 S.W.3d 283; *Halliday*, *supra*.

There was ample evidence for the jury to conclude, without resorting to speculation or conjecture, that Scaggs was in a position of trust or authority when he performed oral sex on D.M. D.M. was fifteen years old; Scaggs permitted D.M. to visit Scaggs's daughter and spend the night at his home; and Scaggs was the only adult present. The jury was free to rely on its common sense to conclude that as the sole adult present, Scaggs was in a position of authority over a child visiting his home. Further, the jury was free to reject D.M.'s testimony that Scaggs was not his babysitter.

### III. *Rule 404(b) Testimony*

This court has recently analyzed the admissibility of evidence under the Arkansas Rules of Evidence. Rule 404(b) provides that

> "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence is not admissible under Rule 404(b) simply to show a prior bad act. *Vance v. State*, 2011 Ark. 243, at 20, 383 S.W.3d 325, 339. Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.* Any circumstance that links a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible under Rule 404(b). *Id.*
>
> While evidence of other crimes or bad acts may be admissible under Rule 404(b), to be probative under Rule 403, the prior crime or bad act must be sufficiently similar to the crime charged. *Vance*, 2011 Ark. 243, at 20, 383 S.W.3d at 339. When offered as Rule 404(b) evidence, the prior bad act need not have the degree of similarity that is required for evidence of modus operandi. *Fells v. State*, 362 Ark. 77, 207 S.W.3d 498 (2005). The previous acts do not have to be identical, just similar. *Vance*, 2011 Ark. 243, at 20, 383 S.W.3d at 339. Moreover, our supreme court has stated that we are to give considerable leeway to the trial court in determining whether the circumstances of the prior crime and the crime at hand were sufficiently similar to warrant admission under Rule 404(b). *Creed v. State*, 372 Ark. 221, 227, 273 S.W.3d 494, 499 (2008).

Additionally, our supreme court has explained that even if evidence is relevant under Rule 404(b), Arkansas Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Vance*, 2011 Ark. 243, at 20, 383 S.W.3d at 339. However, our supreme court has further noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *Id*.; *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289. Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *Id*. This court reviews a trial court's ruling under Rule 403 for an abuse of discretion. *Id*.

*Mondy v. State*, 2019 Ark. App. 290, at 5–6, 577 S.W.3d 460, 464–65.

Scaggs argues that the circuit court abused its discretion when it overruled his objection to J.T.'s testimony admitted under Rule 404(b). He contends that the circuit court erred in concluding that the probative value of the evidence outweighed the danger of unfair prejudice. He argues that the similarities of the alleged offenses were vastly different from each other with "hardly any" specific similarities.

He contends that A.T., a girl, was age seven at the time of the one alleged offense, and D.M., a boy, was fifteen at the time of the one alleged offense. J.T. is a girl and was between ages nine and fifteen at the time of the alleged numerous offenses she described in her Rule 404(b) testimony. A.T. and J.T. are related to Scaggs, but D.M. is not related. A.T.'s allegation involved a game of "Truth or Dare," and none of the other allegations did so. Only A.T. alleged that she danced naked and that Scaggs threatened harm if she told anybody. A.T. alleged digital penetration, J.T. alleged digital penetration along with other acts, and D.M. alleged oral sex performed on him. Scaggs claims that the similarities "fall far from establishing a pattern." *See Efird v. State*, 102 Ark. App. 110, 282 S.W.3d 282 (2008) (holding that it was an abuse of discretion for circuit court to admit evidence of

9

defendant's prior sexual acts when the acts occurred 17 years before the crimes charged, they were dissimilar to the charged acts as defendant was a minor when the prior acts occurred and he was an adult when the charged crimes occurred, and defendant threatened the victim in the charged crimes).

Scaggs also contends that J.T.'s testimony was confusing because she testified as a corroborating witness and as a Rule 404(b) witness, describing (1) the acts perpetrated on A.T. and D.M. and (2) being a victim of Scaggs. He asserts that he was not on trial for any of the alleged acts against J.T. He claims that her testimony was also confusing because she admitted lying in previous testimony. Further, the circuit court stated that the limiting instruction was confusing after it instructed the jury on it.

We hold that the circuit court did not abuse its discretion by admitting evidence of Scaggs's prior sexual conduct with his daughter, J.T., for the purpose of establishing Scaggs's motive and proclivity toward a specific act with minor children. The circuit court permitted J.T. to testify about Scaggs's sexual activities with her after she testified about his sexual activities with A.T. and D.M. The Rule 404(b) evidence was that Scaggs began having sex with his daughter, J.T., when she was nine years old; over the next six years, Scaggs supplied J.T. with alcohol and had sex with her nearly every weekend; and Scaggs stopped when J.T. disclosed the abuse when she thought she was pregnant. The State claims that the probative value of the testimony far outweighed any prejudicial effect and established Scaggs's proclivity for engaging in sexual acts with children in his care. We agree.

This evidence established that Scaggs routinely served alcohol to his underage daughter and engaged in vaginal, anal, oral, and digital sex with her in his bedroom. There is a high degree of similarity between the evidence of Scaggs's sexual activities with J.T. and

10

his sexual assaults of A.T. and D.M., and J.T. was present for Scaggs's sexual assaults of A.T. and D.M. Although not all the circumstances surrounding Scaggs's assaults on A.T. and D.M. mirror those of his sexual activities with J.T., they nonetheless illustrate Scaggs's motive and his depraved sexual proclivity toward a specific act with minor children—in this case, serving minor children alcohol and then engaging in sexual acts with them in his own bedroom. The probative value in establishing Scaggs's proclivity for having sex with the children in his care was not substantially outweighed by any prejudicial effect.

The State also argues that J.T.'s testimony was admissible under the pedophile exception.

> The "pedophile exception" to Rule 404(b) allows evidence of prior sexual conduct with children to show the defendant's proclivity for a specific act with a person and helps show the depraved sexual instinct of the accused. *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55. Under the pedophile exception, we look at factors such as the time interval between the incidents, the similarity of the incidents, and whether the defendant had an intimate relationship with the victim. *Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004).

*Rayburn v. State*, 2018 Ark. App. 84, at 3, 542 S.W.3d 882, 884.

Scaggs argues that for the Rule 404(b) pedophile exception to apply, the victims do not have to live in the same household, *see Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998), but the victims must have resided with the defendant. *See Mosely v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996).

We hold that the pedophile exception does not require the witness to be the same gender as the victim, the sex acts to be identical, or the witness or victim to be a member of the same household as the accused. *See, e.g.*, *Swift v. State*, 363 Ark. 496, 499–500, 215 S.W.3d 619, 621 (2005) (difference in gender between crime victim and other witnesses did not thwart application of pedophile exception when circumstances of abuse were similar;

11

while the "specific acts complained of are not identical, allegations of vaginal touching are admissible in cases of vaginal or oral penetration to show the defendant's attraction to the characteristics of young children"); *Berger v. State*, 343 Ark. 413, 418–19, 36 S.W.3d 286, 289 (2001) (pedophile exception does not require that victim be a member of the same household); *Hernandez v. State*, 331 Ark. 301, 309, 962 S.W.2d 756, 760–61 (1998) (testimony allowed regarding a child who spent the night at defendant's home on occasion, even though not related to the accused).

Accordingly, the circuit court did not abuse its discretion by admitting J.T.'s testimony.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*J. Downum Law Office, PLLC*, by: *Justin E. Downum*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Jonson*, Ass't Att'y Gen., for appellee.