Cite as 2021 Ark. App. 174

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-20-414

| | |
|---|---|
| RAUL TORRES-GARCIA<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** April 21, 2021<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-18-1585]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

## RAYMOND R. ABRAMSON, Judge

Raul Torres-Garcia appeals his convictions of second-degree sexual assault and two counts of first-degree sexual assault. He was sentenced to an aggregate term of fifty years' imprisonment. On appeal, Torres-Garcia argues that the circuit court erred by (1) denying his directed-verdict motion, (2) allowing Mery Rivera's testimony, (3) reading an improper statement of the case to the jury, (4) excluding his wife's testimony, and (5) permitting Lieutenant Helmich's testimony. We affirm, but we must remand to the circuit court with instructions to correct a clerical error in the sentencing order.

On October 18, 2019, the State filed an amended criminal information charging Torres-Garcia with second-degree sexual assault pursuant to Arkansas Code Annotated section 5-14-125(a)(4)(A)(iv) (Repl. 2016) and two counts of first-degree sexual assault

pursuant to Arkansas Code Annotated section 5-14-124(a)(1)(D) (Supp. 2019). The State alleged that Torres-Garcia had assaulted a minor, D.S.L., on or before July 2018 and that he was her temporary caretaker or in a position of trust or authority over her.

Prior to trial, Torres-Garcia moved to exclude the testimony of Mery Rivera. He explained that he had been charged with fourth-degree sexual assault of Rivera in 2006 but that the case ended in a mistrial when Rivera recanted on the stand. He noted that following the mistrial, the court granted his motion to dismiss the charges based on double jeopardy. He argued Rivera's testimony was inadmissible under Arkansas Rules of Evidence 404(b) and 403, was time barred, and violated his double-jeopardy rights.

The court held a hearing on the motion. At the hearing, Rivera testified that she first met Torres-Garcia on MySpace. She stated that their relationship developed and that they began meeting in person to have sex when she was fourteen years old. She testified that they had sex in his car and at a local hotel, and she noted that Torres-Garcia had picked her up at school. Rivera stated that Torres-Garcia ingratiated himself into her life—he befriended her family, joined their church, and attended her quinceañera. She further testified that he had his wife befriend her and had her arrange for Rivera to visit their home. She stated that when she visited his home, he separated her from his family and had sex with her.

Rivera further testified that she "ran away" with Torres-Garcia and left a farewell note for her parents. She stated that after a short period of time, Torres-Garcia advised her to return home. Rivera explained that she then made a statement to law enforcement and that Torres-Garcia was arrested. She, however, continued to communicate with him through his wife and niece. Torres-Garcia told Rivera that if she testified in his favor, he

2

would not go to jail and they could continue their relationship when she turned eighteen years old. She further testified that Torres-Garcia threatened to hurt her family if she testified against him. She admitted that at his trial for the 2006 assault charges, she had lied about their relationship. At the conclusion of the hearing, the court denied Torres-Garcia's motion and found that Rivera's testimony was admissible.

Torres-Garcia then moved to exclude certain portions of Rivera's testimony at trial. Specifically, he sought to exclude testimony that (1) he used social media to communicate with her, (2) he and Rivera ran away together, and (3) Rivera skipped school to have sex with him. He asserted that her testimony on these subjects was inadmissible under Arkansas Rules of Evidence 404(b) and 403. The court denied the motion.

The case proceeded to trial on October 22, 2019. During voir dire, Torres-Garcia objected to the court's reading of the following statement of the case to the jury:

> The State alleges Raul Torres-Garcia was a temporary caretaker or in a position of trust or authority over [D.S.L.], a minor, who was his babysitter, and he engaged in sexual contact and sexual intercourse with her.

He cited Arkansas Code Annotated section 16-89-107 (Repl. 2005), argued that the jury should determine issues of fact, and asserted that the statement shifted the burden of proof. The court overruled the objection and explained that the statement was necessary to ensure that prospective jurors did not have prior knowledge of the case. The jury was thereafter impaneled, and the State presented its case.

Rivera testified consistently with her testimony from the pretrial hearing. During cross-examination, Torres-Garcia questioned Rivera whether she had any "proof" or any

3

"independent verification" of her allegations against him. This line of questioning would come into play later in the trial.

D.S.L. was the next witness and testified that she started babysitting Torres-Garcia's children when she was about fourteen years old and continued until she turned sixteen. She stated that during her first babysitting job, Torres-Garcia stood so close to her that she could feel his penis on her lower back. She stated that on another occasion, he positioned his penis near her vagina and "dry hump[ed]" her when they were fully clothed. She further testified that when he transported her to and from his house, he had stroked her breast. She stated that on about five or six occasions, he stopped at a storage unit and had sex with her in the back of his car. She also testified that Torres-Garcia and his wife were friends with her parents and that they had celebrated holidays together.

D.S.L.'s mother and father, Brenda Lopez and Eduardo Sanchez, testified that Torres-Garcia was a family friend. They both stated that Torres-Garcia had frequently visited them at their party-supply store to socialize and that their families had spent holidays together. Sanchez further testified that he had asked Torres-Garcia to help D.S.L. obtain DACA (Deferred Action for Childhood Arrivals) status and that they had traveled to an immigration office together. He also stated that Torres-Garcia had approached him about D.S.L.'s babysitting his children and that he had encouraged D.S.L. to take the job. He testified that he had trusted Torres-Garcia with his daughter. He noted that he did not have a driver's license and that Torres-Garcia had offered to teach D.S.L. how to drive.

At the close of the State's case, Torres-Garcia moved for a directed verdict on all three charges and argued that the State had failed to offer sufficient evidence that he was a

4

temporary caretaker or in a position of trust or authority over D.S.L. at the time of the assaults. The court denied the motion. Torres-Garcia then presented his defense.

Torres-Garcia called his wife, Blanca Araujo, to testify on his behalf. The State objected to her testimony because she had not been included on Torres-Garcia's witness list for voir dire. Torres-Garcia conceded that Araujo's name had not been on that witness list but asserted that her name had appeared throughout the State's discovery file. He also pointed out that he had reserved the right to call all witnesses who appeared in the State's discovery file in his September 20, 2019 witness list. The court granted the State's request and excluded Araujo's testimony. The court explained that the requirement existed so that it could voir dire the jury on conflicts and that it had just enforced the rule against the State to Torres-Garcia's benefit.[1]

During rebuttal, the State called Lieutenant Helmich of the Rogers Police Department. Torres-Garcia objected to Helmich's testimony in rebuttal. The State responded that Helmich would testify that Torres-Garcia admitted to him that he had sex with Rivera and that Torres-Garcia had opened the door to the testimony in his cross-examination of Rivera when he asked her whether she had independent verification of her allegations. The court overruled Torres-Garcia's objection.

Helmich testified that he had investigated Torres-Garcia for the sexual assault of Rivera and that he interviewed Torres-Garcia on December 31, 2006. Helmich stated that in the interview, Torres-Garcia confessed to him that he had sex with Rivera on multiple occasions.

---

[1]Torres-Garcia proffered Araujo's testimony.

The State also asked Helmich whether Torres-Garcia had mentioned making threats to Rivera's family. Helmich responded, "He told me some of his associates had told [Rivera's] father that if he had gone to prison that [Rivera's father] would lose two more sons." Torres-Garcia objected to Helmich's response and argued that it was double hearsay because he testified to "other people's statements." The court overruled the objection.

The jury later found Torres-Garcia guilty of all three charges, and he was sentenced to an aggregate term of fifty years' imprisonment. This appeal followed.

On appeal, Torres-Garcia first argues that the circuit court erred by denying his directed-verdict motion on all three charges because the State presented insufficient evidence that he was a temporary caretaker or in a position of trust or authority over D.S.L. Rather, he asserts that D.S.L. was a temporary caretaker for his children. He further points out that the evidence did not show that he was D.S.L.'s coach or instructor or that her family had entrusted him with her care.

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Estrada v. State*, 2011 Ark. 3, 376 S.W.3d 395. The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, appellate courts review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

To be guilty of first-degree sexual assault under Arkansas Code Annotated section 5-14-124(a)(1)(D) (Supp. 2019), a person must have engaged in sexual intercourse or deviate

6

sexual activity with a minor who is not the actor's spouse, and the person must have been a temporary caretaker or in a position of trust or authority over the victim. To be guilty of second-degree sexual assault under Arkansas Code Annotated section 5-14-125(a)(4)(A)(iv), a person must engage in sexual contact with a minor and the person must be temporary caretaker or in a position of trust or authority over the minor.

The supreme court has defined "caretaker" as a "person, usually not a parent, who exercises custodial responsibility for a child." *Halliday v. State*, 2011 Ark. App. 544, at 5, 386 S.W.3d 51, 55. Further, we have held that being a chaperone is sufficient to establish that a person is in a position of trust or authority over a victim. *See Scaggs v. State*, 2020 Ark. App. 142, 596 S.W.3d 562.

In *Bowker*, the supreme court held that there was substantial evidence that the defendant was a temporary caretaker when the defendant was a family friend to whom the fifteen-year-old victim's parents entrusted with her care while she was babysitting the defendant's child overnight. *Bowker v. State*, 363 Ark. 345, 214 S.W.3d 243 (2005). In *Scaggs*, we held that there was ample evidence for a jury to conclude that a defendant was in a position of trust or authority when the fifteen-year-old victim was a friend of the defendant's daughter and had spent the night in the defendant's home without another adult present. *Scaggs*, 2020 Ark. App. 142, 596 S.W.3d 562. In *Nelson*, the supreme court held that the State presented evidence from which a jury could have concluded that a defendant stood in a position of trust and authority over a fourteen-year-old victim when the defendant had hired the victim to mow his yard. *Nelson v. State*, 2011 Ark. 429, 384 S.W.3d 534.

In this case, we hold that the State presented sufficient evidence that Torres-Garcia was a temporary caretaker of, or in a position of trust or authority over, D.S.L. At the time of the assaults, D.S.L. was a minor. Her family had a close relationship with Torres-Garcia, and he had approached D.S.L.'s parents about her babysitting his children. Furthermore, Torres-Garcia had driven D.S.L. to and from his home for babysitting purposes. D.S.L.'s father also testified that he trusted Torres-Garcia with his daughter. Given this evidence, we hold that the circuit court did not err by denying Torres-Garcia's directed-verdict motion.

Torres-Garcia next argues that the circuit court abused its discretion by allowing Rivera to testify pursuant to the pedophile exception. He argues that the exception did not apply because Rivera's allegations were dissimilar to D.S.L.'s allegations, and more than twelve years had passed since Rivera had made her allegations. He further asserts that the evidence did not show an intimate relationship because he and Rivera had never lived in the same household.

When the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible under the "pedophile exception" to show motive, intent, or plan pursuant to Arkansas Rule of Evidence 404(b). *Fields v. State*, 2012 Ark. 353. We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Jeffries v. State*, 2014 Ark. 239, 434 S.W.3d 889.

8

For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450. We further apply a reasonableness standard to determine whether a prior crime remains relevant despite the passage of time. *Lamb v. State*, 372 Ark. 277, 284, 275 S.W.3d 144, 150 (2008) (citing *Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006)). Sufficiently similar evidence may be admitted "even when a significant time gap exists." *Allen v. State*, 374 Ark. 309, 317, 287 S.W.3d 579, 585 (2008). We have allowed evidence from many years past to be introduced for these purposes. *See Baumann v. State*, 2018 Ark. App. 564, 566 S.W.3d 494 (holding that thirty-year-old evidence was admissible under the pedophile exception).

We also require that there be an "intimate relationship" between the perpetrator and the victim. *Craigg v. State*, 2012 Ark. 387, at 8, 424 S.W.3d 264, 268. Although our early jurisprudence on the pedophile exception required that the alleged victim of a prior bad act be a member of the defendant's family or household, that requirement has evolved, and now the State need only demonstrate a relationship close in friendship or acquaintance, familiar, near, or confidential. *Id.*

We note that in reviewing the admission of evidence under Rule 404(b), this court has observed that a circuit court has broad discretion in deciding evidentiary issues, and its decisions are not reversed absent an abuse of discretion. *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act

9

improvidently, thoughtlessly, or without due consideration. *Chatmon v. State*, 2015 Ark. 28, 467 S.W.3d 731.

In this case, we hold that the circuit court did not abuse its discretion in admitting Rivera's testimony pursuant to the pedophile exception. Rivera's allegations against Torres-Garcia are sufficiently similar to D.S.L.'s allegations. Both Rivera and D.S.L. were in their early teen years when Torres-Garcia assaulted them. He befriended their families, arranged for visits to his home and for trips in his car, and had sex with them. Even though twelve years had passed between the two allegations, this is within the time frame permitted by appellate courts. The State also presented evidence that Torres-Garcia had an intimate relationship with Rivera. Rivera testified that Torres-Garcia had befriended her family, joined their church, and had used that relationship to arrange for her to visit his home. We therefore hold that the circuit court did not abuse its discretion in admitting Rivera's testimony pursuant to the pedophile exception.

Torres-Garcia alternatively argues that even if Rivera's testimony is admissible under the pedophile exception, the circuit court abused its discretion by not excluding it under Arkansas Rule of Evidence 403 because its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. He claims that her testimony was unfairly prejudicial because the case file concerning Rivera had been destroyed, and he could not prepare a meaningful defense to her allegations. He further asserts that her

testimony was confusing because the dismissal of the case against him was based on double jeopardy. [2]

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403. This court has noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree; otherwise, it would not be offered. *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325; *Rounsaville*, 2009 Ark. 479, 346 S.W.3d 289. Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *Vance*, 2011 Ark. 243, 383 S.W.3d 325. This court reviews a circuit court's ruling under Rule 403 for an abuse of discretion. *Id.*

We find no abuse of discretion by the circuit court. Rivera's testimony illustrates Torres-Garcia's proclivity for sex with young teenage girls. Even though the case file concerning Rivera's allegations had been destroyed, Rivera testified at the pretrial hearing, and Torres-Garcia had the opportunity to cross-examine her then and at trial. Further, the details of the mistrial and the court's double-jeopardy finding were not presented to the jury. Instead, Rivera testified that during the 2006 trial, she perjured herself because Torres-

---

[2]On this point, Torres-Garcia additionally claims that Rivera's testimony was inadmissible because the statute of limitations had run for his prosecution for the assaults. The supreme court has explicitly held that the application of the pedophile exception does not require that the prior act be charged or substantiated. *Allen*, 374 Ark. 309, 287 S.W.3d 579; *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007).

11

Garcia had threatened to hurt her family. Therefore, the probative value of Rivera's testimony was not substantially outweighed by the danger of unfair prejudice or confusion of the issues.

Torres-Garcia argues that even if Rivera's testimony was admissible, the circuit court abused its discretion by permitting her to testify about three specific details of their relationship: (1) he first contacted her through social media, (2) she skipped school to have sex with him, and (3) they attempted to run away together. He points out that the State introduced Rivera's testimony pursuant to the pedophile exception to show his proclivity for sex with young teenage girls, and he argues that these details are irrelevant to that purpose and highly prejudicial to him.

We hold that the circuit court did not abuse its discretion by permitting Rivera to testify about these details. The details explained Rivera's relationship with Torres-Garcia—how they met, when they had sex, and why their relationship ended. The details further illustrate how Torres-Garcia interjected himself into Rivera's life as he did with D.S.L. Accordingly, we find no abuse of discretion on this point.

Torres-Garcia next argues that the circuit court erred by reading the statement of the case to the jury during voir dire. He asserts that the statement violated Arkansas Code Annotated section 16-89-107(b)(1), which states that "[i]ssues of fact shall be tried by a jury." He claims that the statement informed the jury that D.S.L. babysat for him and illegally shifted the burden from the State to him. We disagree. The court informed the jury that it was reading the statement to see whether anyone had prior knowledge of the case,

12

and it prefaced the statement by saying, "The State alleges." Accordingly, we find no error on this point.[3]

Torres-Garcia next argues that the circuit court abused its discretion by excluding his wife's testimony. He acknowledges that he did not comply with the circuit court's discovery order when he failed to include her name on the witness list for voir dire. However, he argues the circuit court should have ordered another remedy such as an opportunity for the State to interview his wife. He further asserts that the State cannot claim unfair surprise by his wife's testimony because her name appeared throughout its discovery file and its witnesses referred to her in their testimony.

Rule 19.7 of the Arkansas Rules of Criminal Procedure provides in part:

(a) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant thereto, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems proper under the circumstances.

It is within the circuit court's discretion which sanction to employ under this rule. *Lowe v. State*, 2019 Ark. App. 231, 575 S.W.3d 589; *Reed v. State*, 312 Ark. 82, 847 S.W.2d 34 (1993).

We hold that the circuit court did not abuse its discretion by excluding Torres-Garcia's wife's testimony. Rule 19.7 specifically provides for the exclusion of evidence as a

---

[3]On this point, Torres-Garcia additionally claims that the statement of the case violated article 7, section 23 of the Arkansas Constitution. However, he did not raise this argument to the circuit court. We will not consider an argument raised for the first time on appeal. *Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002).

sanction for failing to comply with a discovery order. Further, in making its ruling, the circuit court stated that the discovery order was necessary so that the jury could be questioned on conflicts. The court also pointed out that it had enforced the order against the State and had excluded one of its witnesses. Given these circumstances, we find no abuse of discretion.[4]

Torres-Garcia next argues that the circuit court abused its discretion by permitting Thomas Helmich to testify as a rebuttal witness. He points out that the State offered Helmich's testimony to refute his assertions that Rivera had no independent evidence of her allegations. However, he claims that Helmich's testimony went beyond that scope when Helmich testified about the details of his relationship with Rivera.

Genuine rebuttal evidence consists of evidence offered in reply to new matters. *Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279. Evidence can still be categorized as genuine rebuttal evidence even if it overlaps with the evidence in chief. *Id*. However, the evidence must be responsive to that which is presented by the defense. *Id*. It is within the circuit court's discretion whether to admit rebuttal testimony, and the appellate court will not reverse this determination absent an abuse of that discretion. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996).

Here, we hold that the circuit court did not abuse its discretion by allowing Helmich to testify as a rebuttal witness. During cross-examination of Rivera, Torres-Garcia

---

[4]To the extent Torres-Garcia raises violation of his rights under the United States Constitution for the exclusion of his wife's testimony, he did not raise the argument to the circuit court. Again, we will not consider an argument raised for the first time on appeal. *Threadgill*, 347 Ark. 986, 69 S.W.3d 423 (2002).

questioned her on whether she had independent evidence of her allegations, and during rebuttal, the State questioned Helmich about Torres-Garcia's admission that he had sex with Rivera. On appeal, Torres-Garcia argues that Helmich's testimony went beyond the scope of rebuttal; however, he did not object to that testimony at trial. Issues must be presented to the circuit court to be preserved for appeal. *Gilliland*, 2010 Ark. 135, 361 S.W.3d 279.

Torres-Garcia also claims that the circuit court abused its discretion by allowing Helmich to testify to double hearsay. He points to Helmich's testimony that "[Torres-Garcia] had told me some of his associates had told [Rivera's] father that if he had gone to prison that [Rivera's father] would lose two more sons." We need not address whether Helmich's testimony contained double hearsay because Torres-Garcia cannot demonstrate prejudice, and any error that occurred was harmless.

We have held that even when a circuit court errs in admitting evidence, we may declare the error harmless and affirm when the evidence of guilt is overwhelming and the error is slight. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373; *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006). To determine if the error is slight, we look to see if the defendant was prejudiced. *Kelley*, 2009 Ark. 389, 327 S.W.3d 373. The supreme court has refused to find prejudicial error when the evidence in question was merely cumulative to other evidence admitted at trial. *Threadgill*, 347 Ark. 986, 69 S.W.3d 423. Prejudice is not presumed. *Id*. Further, this court has consistently held that the uncorroborated testimony of a rape victim is sufficient evidence to sustain a conviction. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006).

In this case, prior to Helmich's testimony, Rivera testified that Torres-Garcia had threatened to hurt her family if she testified against him. D.S.L. also testified at length about Torres-Garcia's sexual assaults against her. We therefore conclude that any prejudice from the court's alleged evidentiary error was slight and that the evidence of Torres-Garcia's guilt was overwhelming. Accordingly, we find no error on this point.

Although we affirm Torres-Garcia's convictions, we must remand to the circuit court with instructions to correct a clerical error in the sentencing order. The sentencing order indicates that the court sentenced Torres-Garcia on one count of first-degree sexual assault. The record, however, reflects that the jury sentenced him on all counts. We therefore instruct the circuit court to correct this error.

Affirmed; remanded to correct the sentencing order.

HARRISON, C.J., and GRUBER, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.