Cite as 2025 Ark. App. 560

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-24-820

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** November 19, 2025 |
| TYRONE LEVER | | |
| | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-23-484] |
| V. | | |
| | | HONORABLE ROBERT H. |
| STATE OF ARKANSAS | | WYATT, JR., JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

Tyrone Lever appeals his conviction for one count of second-degree sexual assault and argues that there was insufficient evidence to prove that he engaged in sexual contact with the victim. We affirm the conviction.

In August 2023, the State charged Lever with one count of second-degree sexual assault. He was accused of having sexual contact with his eleven-year-old granddaughter, MC. The circuit court conducted a jury trial on 19 August 2024, at which the following evidence was presented.

MC testified that her "Papaw" had touched her and identified him in the courtroom. Lever asked her to come into her grandmother's room and put lotion on his legs and stomach, which she did. He then put lotion on her legs. Lever began "feeling around" her shirt, then put his hand up under her shirt and touched her "ta-tas." He also touched the "split part" of her "private" by putting his hand down the waistband of her shorts and

toucher her with his finger. MC told her grandmother what happened later that day, and her grandmother called the police. On cross-examination, she denied that she had told her grandmother that Lever touched her private on the outside of her shorts.

Lawannda Tate, MC's grandmother and Lever's now ex-wife, testified that she was at work until 2:00 p.m. on the day this incident occurred. After she left work, she went to Walmart, and Lever met her there with MC and MC's little brother. The children left Walmart with her, and Lever left in his own vehicle. On the way home, MC looked troubled and told Tate that she had something to tell her. Tate was shocked when MC told her what had happened, and she immediately called 911. She told the 911 operator, "My grandbaby just told me that her grandfather just molested her." According to the police report, MC told Tate that Lever touched her over her pants, but MC told the detective and the forensic interviewer that Lever touched her inside her pants. Tate agreed that when she talked to the police, she was still in shock and could have been mistaken about what MC had told her.

Officer Liam Drewery verified that when he spoke to Tate, she said MC told her that Lever had put his hand under her shirt and touched her chest region, then used his hand to touch over her pants on her genital region. Tate also said that Lever attempted to take MC's pants off but could not.

Stacy Hubanks, a forensic interviewer with the Children's Advocacy Center of Southeast Arkansas (CAC), testified that she interviewed MC and that her account of what

2

happened was consistent. Hubanks also described MC's statement as "reasonable" and "plausible." Investigator Nytisha King also found no inconsistencies while investigating this incident and recommended a true finding that sexual abuse had occurred.

Chandra Smith, a sexual-assault nurse examiner at CAC, testified that she examined MC the day after this incident and collected vaginal swabs. Jonathan Kordsmeier, a DNA analyst with the Arkansas State Crime Laboratory, testified that there was no male DNA found on MC's vaginal swabs.

After the State rested, the defense moved for a directed verdict, asserting,

> The victim testified up here on the stand that there was digital penetration to his [sic] genital. Other witnesses have indicated that the alleged victim said that the vaginal contact was outside of the pants. Additionally, another witness indicated that my client had put her finger in—his finger in her vagina and—and that it hurt. Those—those are all various substantial inconsistencies. And I submit that—that with inconsistencies at that level, that the victim's testimony is—is unreliable and cannot support a verdict of guilt.

The court denied the motion, and Lever took the stand in his own defense. He denied that any sexual conduct had occurred and said that MC was lying.

After resting its case, the defense renewed its motion for directed verdict, which was again denied. The jury found Lever guilty of second-degree sexual assault, and the court sentenced him to ten years' imprisonment. Lever has timely appealed.

Lever's sole point on appeal is that there was insufficient evidence to prove that any sexual contact occurred between him and MC. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State

3

and consider only the evidence that supports the verdict. *Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006). We will affirm a conviction if substantial evidence exists to support it. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond speculation and conjecture. *Loar v. State*, 368 Ark. 171, 243 S.W.3d 923 (2006).

Lever argues that the conflicting testimony regarding the manner in which he allegedly touched MC is "so substantial that it undermines the reliability of all sexual-contact allegations" made by MC. He also points out the lack of corroborating evidence, such as the presence of his DNA on her vaginal area or the testimony of a third-party witness. Lever concludes that the jury had to resort to speculation and conjecture to reach its verdict.

It is well established that a sexual-assault victim's testimony may constitute substantial evidence to sustain a conviction for sexual assault. *See Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008) (the principle that a rape victim's uncorroborated testimony constitutes substantial evidence to support a guilty verdict is likewise true with respect to sexual offenses other than rape). The victim's testimony need not be corroborated, and the victim's testimony alone describing the sexual contact is enough for a conviction. *Scaggs v. State*, 2020 Ark. App. 142, 596 S.W.3d 562. Moreover, matters such as evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury and not the court. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). Based on the foregoing, we hold that the evidence is sufficient to prove sexual contact and affirm the conviction.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Robinson, Zakrzewski & Taylor, P.A.*, by: *Luke Zakrzewski*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.